**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| HARTFORD ACCIDENT AND INDEMNITY COMPANY and FIRST STATE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. |
| THE DOE RUN RESOURCES CORPORATION f/k/a ST. JOE MINERALS CORPORATION, Serve: Registered Agent CT Corporation System 120 South Central Avenue Clayton, Missouri 63105 | ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| and | ) ) | |
| ZURICH AMERICAN INSURANCE COMPANY as successor-in-interest to ZURICH INSURANCE COMPANY, U.S. BRANCH Serve: Anyone in Charge 1400 American Lane Tower 1- 20th Floor Schaumburg, Illinois 60196-1056 | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiffs HARTFORD ACCIDENT AND INDEMNITY COMPANY ("Hartford A&I") and FIRST STATE INSURANCE COMPANY ("First State," together with Hartford A&I, "Hartford" or "Plaintiffs") for their Complaint for Declaratory Relief against Defendants, state as follows:

**NATURE OF THE ACTION**

1.   This is an action for declaratory judgment pursuant to the federal Declaratory Judgment Action, 28 U.S.C. §§ 2201 et seq. for the purpose of determining questions of actual

\\\DC - 002376/000714 - 2811479 v5

controversy between the parties and construing the legal relations of the parties arising from certain insurance policies issued by Plaintiffs.

2.      On information and belief, since at least the mid-1990s, a number of entities and individuals have asserted claims (the "Underlying Claims") against the Defendants alleging bodily injury and/or property damage caused by exposure to emissions or dispersals of toxic metals, including lead, arising out of the operation of a lead smelter near Herculaneum, MO (the "Herculaneum Site").  In addition, a number of entities and/or individuals have asserted claims for alleged diminution of value of property and/or for medical monitoring relating to the Herculaneum Site.

3.      Hartford issued a number of primary and excess liability insurance policies (the "Policies") to Fluor Corporation ("Fluor") and St. Joe Minerals Corporation ("St. Joe").  On information and belief, Defendant The Doe Run Resources Corporation ("Doe Run") claims that it is the successor to St. Joe, and that Fluor is a former parent company with respect to St. Joe.  Doe Run has tendered a number of Underlying Claims to Plaintiffs, seeking coverage under the Policies for the Underlying Claims.

4.      In this action, Hartford seeks a declaration that it has no obligation under the Policies to indemnify Doe Run for the Underlying Claims and, alternatively, to the extent it has any such obligation, that Defendant Zurich American Insurance Company ("Zurich") is required to contribute to the indemnity for these Underlying Claims.

## PARTIES

5.      Plaintiff First State is a corporation organized under the laws of Connecticut with its principal place of business in Massachusetts.

6. Plaintiff Hartford A&I is a corporation organized under the laws of Connecticut with its principal place of business in Connecticut.

7. On information and belief, Doe Run is a New York corporation with its principal place of business in Missouri.

8. Doe Run's alleged predecessor previously filed coverage litigation against Zurich in the State of California in connection with liability for certain Underlying Claims in an action in Complex Civil Department CX103 captioned <u>St. Joe Minerals Corporation v. Allianz Insurance Company, et al.</u>, Superior Court of the State of California for the County of Orange, Case No. 697526.

9. On information and belief, Zurich is an insurance company domiciled in the State of Illinois with its principal place of business in Illinois. On information and belief, at all times relevant to this complaint, Zurich was doing business in the State of Missouri.

10. Zurich issued to St. Joe certain liability insurance policies that are potentially applicable to the Underlying Claims asserted against Doe Run including without limitation policy numbers 81-49-527, 82-64-308, 83-50-273, 84-13-131, 84-87-501, 85-50-737, 85-83-917, 85-96-343, 86-69-900, 87-52-260, 88-83-748, 88-83-314, 89-11-952, 80-60-784, 80-72-010, and 32-51-983-00.

**JURISDICTION**

11. This Court has personal jurisdiction over Plaintiffs' claims pursuant to Mo. Rev. Stat. § 506.500 because the Defendants have conducted business within the state of Missouri or otherwise performed acts or omissions within the state giving rise to or relating to the Underlying Claims and/or requests for coverage of the Underlying Claims that give rise to this case.

12. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of costs. Actual controversies exist among Plaintiffs and Defendants pursuant to which Plaintiffs seek declarations of the rights, obligations and legal relations of the parties. These controversies are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## VENUE

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a). A substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within this judicial district, Defendant Doe Run operates its business at the Herculaneum Site within Jefferson County, Missouri, and Defendant Zurich issued policies to St. Joe which, as alleged predecessor to Doe Run, operated its business within this district. Defendants also took numerous actions and/or made numerous decisions regarding operation, management or supervision of the Herculaneum site, or regarding the Underlying Claims within this District.

## FACTUAL ALLEGATIONS

### Insurance Policies at Issue

14. Hartford A&I issued certain primary insurance policies to Fluor (the "Fluor Policies") under which Doe Run has tendered claims to Hartford A&I, including:

| Policy Number | Policy Period |
|---|---|
| 56 MNS P13368E | 6/1/84-6/1/85 |
| 56 MNS P13380E | 6/1/85-7/1/86 |

15. First State issued certain umbrella and excess liability policies to St. Joe Minerals Corporation (the "St. Joe Policies"), to which Doe Run contends it is the successor-in-interest, and under which Doe Run has tendered claims to First State:

| Policy Number | Policy Period |
|---|---|
| 921375 | 8/5/74-2/14/77 |
| 924494 | 2/14/77-2/4/78 |
| 926349 | 2/4/78-3/28/79 |
| 946115 | 2/4/80-2/4/81 |
| 936115 | 2/4/81-2/4/82 |
| 948237 | 2/4/81-8/4/82 |
| 933243 | 2/4/82-8/4/82 |

16.     The Fluor Policies and the St. Joe Policies all contain terms, conditions and exclusions that define and limit the scope of coverage afforded by each of the Policies.

**Allegations of the Underlying Claims at the Herculaneum Site**

17.     On information and belief, since 1892, Doe Run and/or its alleged predecessors in interest have, at various times, owned, operated and/or supervised operation of the lead smelter at the Herculaneum Site. On information and belief, the smelter has been run by Doe Run since its formation in 1986.

18.     On information and belief, operation of the smelter at the Herculaneum Site is alleged to have produced lead emissions and fumes as the result of processing lead ore and/or lead ore concentrate recovered from mines, including certain mines operated by Doe Run. The Underlying Claims relating to the Herculaneum Site allege that Doe Run variously: (i) failed to operate the smelter at the Herculaneum Site in a safe manner; (ii) failed properly to monitor emissions from the Herculaneum Site; (iii) failed to supervise the proper usage and disposal of toxic metals, including lead; (iv) failed properly to dispose of toxic metals, including lead; (v) failed to warn persons living in the Herculaneum area of the dangers associated with the smelter; and (vi) failed to meet regulatory and environmental standards.

19.     The Underlying Claims relating to the Herculaneum Site, on information and belief, allege that Doe Run owned, operated, supervised, or is otherwise responsible for

operation of the smelter at the Herculaneum Site. On information and belief, the Underlying Claims accordingly allege that Doe Run is liable for alleged bodily injury, property damage, medical monitoring and/or property value diminution that has resulted from the lead emissions and toxic fumes dispersed from the Herculaneum Site, and have sought compensatory as well as punitive and/or exemplary damages from Doe Run.

### Doe Run Tenders Claims to Its Primary Insurer

20.     On information and belief, Doe Run has tendered certain of the Underlying Claims to Zurich for a defense. Zurich issued primary liability insurance to St. Joe for various policy periods from December 31, 1959 through February 4, 1985.

21.     On March 19, 2001, a California state court ruled, in the initial phase of declaratory judgment actions initiated by Zurich, that Hartford A&I had an obligation to contribute on an equitable basis to the defense of Doe Run under the Fluor Policies, subject to the deductibles and retrospective premiums of the Fluor Policies. <u>Zurich Insurance Company v. Hartford Accident and Indemnity Company, et al.</u>, Court of the State of California for the County of Orange, Case No. 791336, and <u>Zurich-American Insurance Company v. Hartford Accident and Indemnity Company, et al.</u>, Court of the State of California for the County of Orange, Case No. 02CC00232. Zurich did not seek a ruling regarding the insurers' respective obligations (if any) to indemnify Doe Run in connection with the Underlying Claims and none was made.

22.     In November of 2006, Zurich and Hartford A&I reached an agreement regarding their respective obligations to pay for the defense costs of certain claims asserted against Doe Run, including certain of the Underlying Claims. Hartford A&I has reimbursed Zurich for millions of dollars in defense costs pursuant to this agreement.

23. On or about March 19, 2008, Doe Run notified Hartford for the first time that certain of the Underlying Claims relating to the Herculaneum Site were scheduled for mediation the following week on March 25 and 26, 2008, and were scheduled for trial the next month on April 28, 2008. Doe Run also notified Hartford that, depending on whether there was a retrospective premium obligation under the Fluor Policies, Doe Run "may" seek coverage for these Underlying Claims under the Fluor Policies, notwithstanding that Doe Run had been previously aware of such claims for several years and had not provided any prior information about such claims to Hartford.

24. Hartford responded to this tender in writing, explaining that certain terms, conditions, and exclusions found in the Fluor Policies may preclude coverage for these Underlying Claims and requesting additional information. To date, Hartford has received almost none of the additional information it requested, and has received little additional information in writing.

25. Doe Run has subsequently informed Hartford of mediations scheduled with respect to additional Underlying Claims relating to the Herculaneum Site, and has requested that Hartford participate in funding settlement offers in connection with those Underlying Claims.

26. Hartford again responded to these additional tenders in writing, explaining that certain terms, conditions, and exclusions contained in the Fluor Policies may preclude coverage for the Underlying Claims and again requesting additional information. To date, Hartford has not received the additional information it requested.

27. On or about March 27, 2008, Doe Run entered into a settlement in certain of its Underlying Claims (the "Warden Suit") whereby it was dismissed.

28. Prior to entering into the Warden Settlement, Doe Run neither tendered the Warden Suit to Hartford, nor obtained Hartford's consent to settle the Warden Suit.

29. Hartford has continued to reimburse Zurich for defense costs incurred in connection with the Underlying Claims. However, based on the information that Hartford has received to date, Hartford has no obligation to indemnify Doe Run for the Underlying Claims relating to the Herculaneum Site. Accordingly, a genuine dispute exists between Hartford and Doe Run regarding whether, and the extent to which, Hartford is required to indemnify Doe Run for the Underlying Claims relating to the Herculaneum Site.

### Allegations Pertaining to the BNSF Suit

30. Doe Run was named as a defendant in a suit brought by BNSF Railway Company ("BNSF") seeking recovery from Doe Run for liability it allegedly has or may incur for the defense and settlement of bodily injury and property damage claims relating to lead ore concentrate, and for costs of environmental cleanup at rail yards, sidings, and tracks (the "BNSF Suit").

31. On or about July 14, 2008, Doe Run entered into a settlement with BNSF whereby it was dismissed from the BSNF Suit.

32. Doe Run did not obtain Hartford's consent prior to settling the BNSF Suit.

### COUNT I
### Declaration That the Hartford A&I Policies Do Not Provide Indemnity For Herculaneum Claims

33. Plaintiffs re-allege and incorporate herein paragraphs 1 through 32 above as if fully set forth herein.

34. Actual and justiciable controversies exist between Hartford and Doe Run with respect to the obligations of Hartford A&I to indemnify Doe Run for Underlying Claims arising out of alleged exposure to contaminants from the Herculaneum Site.

35. The Fluor Policies provide coverage, subject to their terms, conditions, and exclusions only for "personal injury sustained by any person and caused by an occurrence" and "property damage including but not limited to the loss of use of property, caused by an occurrence," as well as certain types of "malpractice liability" not relevant to this dispute. The Fluor Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected not intended from the standpoint of the insured." The Fluor Policies, therefore, provide no coverage for Underlying Claims that do not result from bodily injury or property damage, nor do they provide coverage for harm, injury or damage that is expected or intended from the standpoint of Defendants.

36. The Fluor Policies also contain terms and conditions that create obligations that insureds must meet as a prerequisite to coverage. The Fluor Policies require the Insured to provide prompt written notice of claims against it, stating that the insured must provide:

> written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances [of the injury or damage] . . . as soon as practicable after the Named Insured's Vice President, Insurance and Risk Management, has knowledge of such injury or damage.

37. Similarly, the Insured seeking coverage is required to cooperate in the investigation, defense, and resolution of any lawsuit for which it is seeking coverage:

> The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution . . . . The Insured

> shall not, except at his own cost, voluntarily make any payment, assume and obligation or incur any expense other than for first aid to others at the time of accident.

38. Doe Run did not give Hartford timely notice of the Underlying Claims, nor has it cooperated with Hartford in the investigation, defense and/or resolution of the Underlying Claims.

39. The Fluor Policies contain other significant conditions that require compliance as a precedent to coverage that have not been met.

40. The Fluor Policies also contain certain exclusions that preclude coverage for personal injury and property damage caused by an occurrence. The Fluor Policies, for example, eliminate coverage for personal injury and property damage caused by pollution:

> It is agreed that the insurance does not apply to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Each of the Fluor Policies contains such an exclusion (the "Pollution Exclusion").

41. The Fluor Policies also both contain an "Exclusion Endorsement" which eliminates coverage for St. Joe – the alleged predecessor-in-interest to Doe Run – and all of its subsidiaries:

> It is agreed that St. Joe Minerals Corporation and all subsidiaries are excluded from the named insured, item #1 of Policy Declarations.
>
> It is further agreed, however, that the coverage afforded by the "Difference in Conditions" Endorsement (Endorsement #43) will apply to the above entities and to Massey Coal Company, but only as respects the liability or interest of St. Joe Minerals Corporation in the operations of Massey Coal Company.

The Difference in Conditions Endorsement "means when a liability policy purchased through another insurance company is more limited in its coverage than this policy . . . the broader extensions of this policy shall apply to such coverage."

42. The Exclusion Endorsement unambiguously eliminates all coverage for Doe Run, except to the extent liability arises out of the operations of Massey Coal Corporation.

43. The Herculaneum Site is not related to, and does not arise out of, the operations of the Massey Coal Corporation.

44. Accordingly, the Exclusion Endorsement eliminates any indemnification obligation with respect to the Underlying Claims.

45. The Fluor Policies contain additional exclusions that preclude coverage for the Underlying Claims.

46. Hartford A&I is therefore entitled to a declaration that it has no obligation, under the Fluor Policies, to indemnify Doe Run for the Underlying Claims relating to the Herculaneum Site.

## COUNT TWO
### Declaration That St. Joe Policies Do Not Provide Indemnity For Underlying Claims

47. Plaintiffs re-allege and incorporate herein paragraphs 1 through 46 above as if fully set forth herein.

48. The St. Joe Policies contain a number of terms, conditions, and exclusions that define and limit the scope of First State's coverage obligations with respect to the Underlying Claims.

49. Many of those terms, conditions, and exclusions are the same as in the Fluor Policies. In particular, the St. Joe Policies provide coverage only for Underlying Claims that

result from "personal injury" and/or "property damage" caused by an "occurrence." On information and belief, the St. Joe Policies define "occurrence" to mean an accident or event that results in injury or damage that is "neither expected nor intended from the standpoint of the Insured."

50. On information and belief, the St. Joe Policies contain, or follow form to policies that contain, the same Pollution Exclusion and the same notice and cooperation clauses found in the Fluor Policies.

51. Doe Run has failed to comply with some or all of these terms, conditions, and exclusions.

52. The St. Joe Policies are umbrella and excess policies that attach, and to which coverage obligations apply, only after any underlying limits of insurance have been properly exhausted.

53. Defendants have failed to demonstrate that the underlying limits of liability have been properly exhausted.

54. First State is accordingly entitled to a declaration that it has no coverage obligations to Defendants with respect to the Herculaneum Underlying Clams or the St. Joe Policies.

## COUNT THREE
## Declaration that Fluor Policies and the St. Joe Policies Do Not Provide Coverage for the Warden Settlement or the BNSF Settlement

55. Plaintiffs re-allege and incorporate herein Paragraphs 1 through 54 above as if fully set forth herein.

56. Doe Run did not seek Plaintiffs' consent prior to settling the Warden Suit and/or the BNSF Suit.

57.     Doe Run has failed to satisfy the terms and conditions of the Fluor Policies and the St. Joe Policies with respect to the Warden Suit and the BNSF Suit, and coverage for the Warden Suit and the BNSF Suit are subject to additional terms and exclusions of the Fluor and St. Joe Policies that limit and preclude coverage.

58.     Plaintiffs are accordingly entitled to a declaration that they have no obligation to indemnify Doe Run with respect to the Warden Suit and/or the BNSF Suit.

## COUNT FOUR
### Declaratory Relief and Contribution Against Zurich

59.     Plaintiffs re-allege and incorporate paragraphs 1 through 58 as if fully set forth herein.

60.     Plaintiffs have no obligation to indemnify Doe Run with respect to the Underlying Claims arising from the Herculaneum Site.

61.     To the extent that Hartford A&I or First State are obligated to indemnify Doe Run for the Underlying Claims at the Herculaneum Site, Hartford A&I and First State are entitled to contribution from Zurich.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Hartford A&I and First State respectfully request that the Court:

(a)     enter a judgment declaring that Hartford A&I has no obligation indemnify Doe Run under the Fluor Policies for any Underlying Claims arising out of injury alleged due to toxic metal or lead fumes or dispersals from the Herculaneum Site;

(b)     enter a judgment declaring that First State has no obligation to defend or indemnify Doe Run under the St. Joe Policies for any Underlying Claims arising out of injury alleged due to toxic metal or lead fumes or dispersals from the Herculaneum Site;

(c) enter a judgment declaring that neither Hartford A&I nor First State is obligated, under their respective policies, to reimburse Doe Run for the Warden Settlement or the BSNF Settlement;

(d) enter a judgment that, to the extent they are required to pay for Underlying Claims arising from the Herculaneum Site, Plaintiffs are entitled to contribution from Zurich in an appropriate *pro rata* share;

(e) grant Plaintiffs costs and reasonable attorneys' fees; and

(f) grant Plaintiffs such other and further relief as the Court may deem just and proper.

Respectfully submitted,

JENKINS & KLING, P.C.

  /s/ Michael P. Stephens
Ronald E. Jenkins, #7127
Michael P. Stephens, #4456
10 South Brentwood Blvd.
Suite 200
Clayton, MO 63105
314-721-2525  (telephone)
314-721-5525  (facsimile)
rjenkins@jenkinskling.com
mstephens@jenkinskling.com

and

James P. Ruggeri
Joshua D. Weinberg
Hogan & Hartson LLP
555 Thirteenth St., NW
Washington, DC  20004
(202) 637-5600 (telephone)
(202) 637-5910 (facsimile)
JPRuggeri@HHLAW.com
JDWeinberg@HHLAW.COM

Counsel for Plaintiffs