UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HARTFORD ACCIDENT AND INDEMNITY COMPANY and FIRST STATE INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>THE DOE RUN RESOURCES CORPORATION f/k/a ST. JOE MINERALS CORPORATION,<br><br>and<br><br>ZURICH AMERICAN INSURANCE COMPANY as successor-in-interest to ZURICH INSURANCE COMPANY, U.S. BRANCH<br><br>Defendants. | No. 4:08-CV-01687-CAS |
| THE DOE RUN RESOURCES CORPORATION,<br><br>Counter-Claimant,<br><br>v.<br><br>HARTFORD ACCIDENT AND INDEMNITY COMPANY and FIRST STATE INSURANCE COMPANY,<br><br>Counter-Defendants. | |

**THE DOE RUN RESOURCES CORPORATION'S OPPOSITION TO MOTION TO DISMISS COUNTS I, II, AND V OF COUNTERCLAIM**

**I.  INTRODUCTION**

Plaintiffs and Counterclaimants Hartford Accident and Indemnity Company and First State Insurance Company (collectively, "Hartford") have failed to meet their burden

1

in connection with their motion to dismiss Counts I (Breach of Fiduciary Duty), II (Breach of Insurance Contract), and V (Breach of the Covenant of Good Faith and Fair Dealing) (the "Motion") of the Counterclaim filed by The Doe Run Resources Corporation ("Doe Run"). Indeed, Hartford's Motion represents an unfounded effort to avoid liability for improper disclosure of confidential information.

Missouri law is clear that a fiduciary relationship may arise as a matter of law by virtue of the parties' relationship, or it may arise as a result of the special circumstances of the parties' relationship where one places trust in the other. This case represents precisely the special circumstances envisioned by Missouri law to establish a fiduciary duty. When in possession of confidential settlement information, an insurance company, like Hartford, has a special confidential relationship with its insured—a fiduciary relationship—and from that relationship flows a duty to protect that information from unauthorized disclosure. Hartford breached this duty. Its contention that a fiduciary duty may only arise where the insurer is entrusted with the defense of its insured misstates and misapplies governing legal standards.

Doe Run has plainly alleged Hartford's involvement in the defense and settlement of Doe Run's claims, which is sufficient to survive a 12(b)(6) even under Hartford's strained interpretation of Missouri law. Hartford is simply quarreling with the facts pleaded in the counterclaim and reasonable inferences from those facts, which is wholly inappropriate on a Rule 12(b)(6) motion.

Finally, inherent in the insurance contract is the obligation to keep confidential the information entrusted by the policyholder in performing its duties under the agreement. As alleged in Doe Run's Counterclaim, Hartford neglected this obligation when it released the

settlement information, thereby breaching the insurance contract. Hartford's conduct demonstrates blatant bad faith by putting its interests ahead of those of its insured.

Taking Doe Run's allegations to be true and with all reasonable inferences in its favor, Doe Run has alleged sufficient facts to state claims for breach of fiduciary duty, breach of insurance contract, and breach of the covenant of good faith and fair dealing. Accordingly, Hartford's Motion must be denied in its entirety.

## II.   FACTUAL AND PROCEDURAL HISTORY

In 2002, Doe Run was named as a defendant in *Grace Warden, et al. v. The Doe Run Resources Corporation, et al.* (the "*Warden* Action"), a personal injury action by several residents or former residents of Herculaneum, Missouri who lived near a lead smelter owned and operated by Doe Run. The *Warden* Action was settled in April 2008. In 2005, Doe Run was named as a defendant in *BNSF Railway Company v. The Doe Run Resources Corporation, et al.* (the "*BNSF* Action"). The *BNSF* Action alleged, *inter alia*, that Doe Run was obligated to indemnify BNSF for payments made by BNSF to personal injury claimants based on exposure to lead. The *BNSF* action was settled in June 2008.

Hartford participated in Doe Run's defense of the *Warden* and *BNSF* actions by contributing to the cost of the defense of those actions,[1] and did so until those actions were resolved by settlement. At the time agreements to settle the *Warden* and *BNSF* Actions were reached, Doe Run sought Hartford's commitment to contribute to the settlement of those actions. Prior to rendering its decision, Hartford demanded copies of the *Warden* and *BNSF*

---

[1] Hartford issued certain primary insurance policies to Fluor Corporation under which Doe Run is an additional insured with respect to various lawsuits against Doe Run (the "Policies"). Hartford made defense coverage contribution payments to Doe Run's other primary insurer, Zurich Insurance Company.

3

settlement agreements. Doe Run provided the agreements on the condition that Hartford maintain the confidentiality of the settlement agreements and Hartford agreed.

Thereafter, Hartford refused to provide any funding for the *Warden* and *BNSF* settlements and instead, on November 3, 2008, filed the initial complaint in this action against Doe Run (the "Original Complaint"). The Original Complaint improperly disclosed highly confidential information regarding the *Warden* and *BNSF* Action settlements, including the fact that Doe Run made substantial payments to the plaintiffs (the "Confidential Settlement Information").

Hartford's misconduct was discovered by Doe Run on or about November 4, 2008. In an effort to mitigate the damage to Doe Run caused by Hartford's improper disclosure, Doe Run immediately demanded that the Original Complaint be placed under seal with the Court, or that it be withdrawn. Hartford agreed and the Original Complaint was replaced with a revised complaint which does not reference the amount of the settlements in the *Warden* and *BNSF* Actions (the "Revised Complaint"). Despite these measures, however, the Original Complaint was retained by one or more legal news agencies, which have refused to replace the Original Complaint with the Revised Complaint. Counterclaim ¶ 29.

Hartford's public disclosures of the confidential settlement information were made despite Hartford's prior agreement not to release the information, <u>and</u> in violation of Hartford's legal obligations to maintain the confidentiality of information shared between insured and insurer. The disclosures are even more egregious because they took place in the context of a legal action initiated by Hartford against its policyholder, where the information was clearly being used (and disclosed) to advance Hartford's interest at Doe Run's expense.

4

Hartford's actions have created significant additional exposure for Doe Run.  Consequently, on January 5, 2005, Doe Run filed its counterclaim seeking, among other things, damages for Hartford's improper disclosure of the confidential information.

## III.   ARGUMENT

### A.   STANDARD OF REVIEW

The issue on a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is not whether a party will ultimately prevail, but rather whether the party is entitled to offer evidence in support of the claims asserted.  *Doe v. Hartz*, 52 F. Supp. 2d 1027, 1049 (N.D. Iowa 1999) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *United States v. Aceto Agr. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989).  "A motion to dismiss for failure to state a claim should be granted only if it is clear that no relief could be granted under *any* set of facts, construing the allegations in the complaint favorably to the pleader." *County of St. Charles, Missouri v. Missouri Family Health Council*, 107 F.3d 682, 684 (8th Cir.), cert. denied, 522 U.S. 859 (1997) (citations omitted; emphasis added).  "Thus, '[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'"  *Doe*, 52 F. Supp. 2d at 1050 (*citing Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)) (internal quotations and citations omitted).[2]  Hartford has failed to meet this burden.

---

[2] As a procedural matter, Federal Rule of Civil Procedure 8(a) requires a plaintiff to set forth only "a short and plain statement of the claim, showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

### B. DOE RUN HAS SUFFICIENTLY ALLEGED A CLAIM FOR BREACH OF FIDUCIARY DUTY

Contrary to Hartford's assertion that no general fiduciary relationship exists between an insurer and insured, Missouri law is clear that a fiduciary relationship may arise as a matter of law by virtue of the parties' relationship, or it may arise as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former. Indeed, the cases cited by Hartford recognize this principle. *See Shervin v. Huntleigh Secs. Corp.*, 85 S.W.3d 737, 740-41 (Mo. Ct. App. 2002); *Grewell v. State Farm Mut. Auto. Ins. Co.*, 162 S.W.3d 503 (Mo. Ct. App. 2005) (holding that a fiduciary relationship existed between the insureds and the insurer, given the insurer's obligation to defend the insureds). As the *Grewell* court noted "it seems apparent that an insurer, who is entrusted to defend a claim on behalf of the insured, acts in a fiduciary capacity." *Id*. at 508-09. This is precisely the case here where, consistent with an insurer-insured fiduciary relationship, Doe Run entrusted its insurer with the Confidential Settlement Information in the expectation of coverage.

Moreover, despite Hartford's contentions to the contrary, Missouri law recognizes the insurer's fiduciary duty beyond the defense context. *See Ingram v. Mutual of Omaha Ins. Co.*, 170 F. Supp. 2d 907, 908 (W.D. Mo. 2001) (finding a breach of fiduciary duty where an insurer turned over a policyholder's medical records in response to a third-party subpoena without obtaining the policyholder's consent or informing her of the disclosure). The *Ingram* court held that when an insurance company possesses confidential records, the insurer owes a fiduciary duty to protect those records from unauthorized disclosure, and turning over a policyholder's medical records in response to a subpoena,

6

without informing the policyholder, constituted a breach of that fiduciary duty. *Id*. at 911. Likewise, Doe Run's actions in providing the Confidential Settlement Information to Hartford are consistent with an intention to reveal confidential information only to the extent necessary to obtain coverage under the Policies.[3] Hartford owed a fiduciary duty to protect such information from unauthorized disclosure and, under Missouri law, its dissemination of this confidential information without Doe Run's consent constitutes a breach of its fiduciary duty. These allegations are more than sufficient under federal notice pleading standards to state a claim for Harford's breach of its fiduciary duty to Doe Run.

    **C.    DOE RUN HAS SUFFICIENTLY ALLEGED BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

By disclosing the Confidential Settlement Information, Hartford breached the covenant of good faith and fair dealing implicit in each of the insurance contracts issued by Hartford to Doe Run. Indeed, the covenant of good faith and fair dealing requires Hartford to deal honestly and faithfully with Doe Run, particularly with respect to third-party liability actions. Further, Hartford is obliged to consider Doe Run's best interests and assist in the furtherance of those interests even when doing so may require a sacrifice of Hartford's own interests. *Zumwalt v. Utilities Ins. Co.*, 228 S.W.2d 750, 756 (Mo. 1950) ("[B]ad faith on the part of the insurer would be the intentional disregard of the financial interest of the insured in the hope of escaping the responsibility imposed upon it by its policy."). Moreover, as noted above, there is a fiduciary relationship between Hartford and Doe Run. *See supra* at Section

---

[3] In fact, Doe Run's intention that the information remain confidential is undisputed. Doe Run demanded that Hartford agree to maintain the confidential nature of the Settlement Information and Doe Run would not disclose the information until it obtained that agreement from Hartford.

7

III.B.  Accordingly, Hartford's argument that Count V fails for lack of fiduciary duty is without merit.

Hartford's assertion that Doe Run's claim fails because Doe Run has not entrusted Hartford with defense or settlement of its claims is also without merit.  First and foremost, Doe Run clearly alleges that Hartford participated in Doe Run's defense of the *Warden* and *BNSF* Actions by paying contribution to Zurich for the defense coverage Zurich was providing in those actions.  Counterclaim ¶18.  Doe Run further alleges that it sought Hartford's commitment to contribute to the settlement of those actions.  Counterclaim ¶19.  Thus, the facts as pleaded allege Doe Run sought Hartford's defense and settlement of its claims, and provided confidential information to Hartford in that context.  This is plainly sufficient to establish a claim for relief under the liberal federal pleading standards.  *See* Fed. R. Civ. P. 8(a).  Accordingly, Doe Run has properly alleged breach of the covenant of good faith and fair dealing for Hartford's disclosure of confidential information.

Furthermore, Hartford cites no authority for limiting claims for breach of the covenant of good faith and fair dealing only to situations where the insurer defends and settles claims on behalf of the insured.  While bad faith claims commonly arise where the insurer fails to settle a claim against an insured within the applicable policy limits (*see, e.g., Truck Ins. Exchange v. Prairie Framing, LLC*, 162 S.W.3d 64, 93 (Mo. Ct. App. 2005), and Missouri has implemented a statute addressing vexatious refusal of an insurer to pay,[4] neither of these authorities limits bad faith claims in other contexts.  On the contrary, courts have held

---

[4] If an insurance company refuses to pay a claim "without reasonable cause or excuse," then a jury may award "damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars. . . ." Mo. Ann. Stat. § 375.420.  The statute also allows interest and attorney's fees.  *Id.*

8

that Missouri's vexatious refusal statute does <u>not</u> preempt or exclude other remedies that an insured may have against his or her insurance company. By providing the vexatious refusal remedy under § 375.420, the legislature did not intend to immunize insurers against all other claims made by an insured for conduct occurring during a claim determination. *See Overcast v. Billings Mutual Ins. Co.*, 11 S.W.3d 62, 69 (Mo. 2000). Thus, Missouri law does not displace or preempt "bad faith" remedies for unauthorized disclosure of confidential information.

Hartford's bad faith is readily apparent. Bad faith liability comes from the contract principle of good faith and fair dealing. *See Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 473 (Mo. App. 1986). It is an implied covenant governing every duty the insurer has towards the insured. *See Finova Cap. Corp. v. Ream*, 230 S.W.3d 35, 45 (Mo. Ct. App. 2007). Indeed, the very definition of bad faith, and thus the breach of the covenant of good faith and fair dealing, is the substitution of the insurance company's financial well-being and interests for that of the insured. *Zumwalt*, 228 S.W.2d at 756. Here, it is clear that Hartford substituted its financial well-being for that of Doe Run. As Doe Run alleges, Hartford breached the covenant "when it not only failed to maintain the confidentiality of the Confidential Settlement Information but, in fact, intentionally disclosed it to the public by filing the Original Complaint in order to gain a litigation advantage over Doe Run." Counterclaim ¶ 58. Accordingly, Hartford's request to dismiss Doe Run's claim for breach of the implied covenant of good faith and fair dealing must be denied in its entirety.

### D. DOE RUN HAS SUFFICIENTLY ALLEGED BREACH OF CONTRACT

Pursuant to the terms of the Policies, Hartford was obligated to assist Doe Run in its defense of the *Warden* and *BNSF* Actions. This duty to defend carried with it an implied and obvious duty to maintain the confidentiality of all confidential information Hartford obtained from Doe Run for the express purpose of assisting with Doe Run's defense. Hartford breached these contractual obligations when it disclosed the Confidential Information and used that information against Doe Run in an attempt to avoid its coverage obligations.

Hartford's contention that Doe Run did not provide the Confidential Information for the purpose of assisting in its defense is patently false. Indeed, Doe Run alleges that: (1) "Hartford participated in Doe Run's defense of the *Warden* and *BNSF* actions by paying contribution to Zurich;" (2) "Doe Run sought Hartford's commitment to contribute to the settlement of those actions;" and (3) "[p]rior to rendering its decision, Hartford demanded copies of the *Warden* and *BNSF* Lawsuits settlement agreements." Counterclaim ¶¶ 18-19. Doe Run provided the settlement information to Hartford in order to receive insurance coverage under the Policies. Hartford is simply disputing *facts* pleaded in the Counterclaim and reasonable inferences from those facts, which is inappropriate on a Rule 12(b)(6) motion. *See County of St. Charles, Missouri*, 107 F.3d at 684.

Hartford's final argument that breach is a potentially cognizable claim only with respect to separate confidentiality agreements, is equally unavailing.[5] Doe Run provided

---

[5] Indeed, the implications of such an argument are plainly against public policy, ignoring one of insurers' most basic responsibilities: to protect confidential policyholder information. Hartford's position that, as a matter of law, an insured cannot maintain a cause of action against its insurer for

10

sensitive information to Hartford solely to obtain coverage under the Policies and with the expectation that Hartford would protect such information from unauthorized dissemination. Hartford breached the insurance contract when it disseminated this information without Doe Run's authorization.  *See* Counterclaim ¶¶ 38-39.  Doe Run has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Accordingly, these allegations are sufficient to state a claim for breach of contract under federal notice-pleading standards.

## IV.   CONCLUSION

For all of the foregoing reasons, Doe run respectfully requests that the Court deny Hartford's motion to dismiss the complaint in its entirety.  Alternatively, to the extent the Court grants Hartford's Motion in whole or in part, Doe Run respectfully requests leave to amend.

Respectfully submitted,

**ABELSON | HERRON, LLP**

/s/ Marc D. Halpern
Marc D. Halpern
Gwendolyn M. Toczko
ABELSON | HERRON, LLP
501 West Broadway, Suite 800
San Diego, CA  92101
(619) 618-7000 (telephone)
(619) 618-7001 (facsimile)
mhalpern@abelsonherron.com
gtoczko@abelsonherron.com

---

disclosure of confidential information unless the parties have gone through the unusual extra step of entering a separate confidentiality agreement, translates into insurers having unfettered license to disclose the most sensitive and confidential information, leaving most policyholders with absolutely no recourse.

                                              Leslie A. Pereira
                                              ABELSON | HERRON, LLP
                                              333 South Grand Avenue, Suite 1550
                                              Los Angeles, CA  90071
                                              (213) 402-1900 (telephone)
                                              (213) 402-1901 (facsimile)
                                              lpereira@abelsonherron.com

                                              *Counsel for Defendant and Counter-Claimant*
                                              *The Doe Run Resources Corporation*

Date:  March 6, 2009