UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HARTFORD ACCIDENT AND INDEMNITY COMPANY and FIRST STATE INSURANCE COMPANY,<br><br>      Plaintiffs,<br><br>v.<br><br>THE DOE RUN RESOURCES CORPORATION f/k/a ST. JOE MINERALS CORPORATION,<br><br>and<br><br>ZURICH AMERICAN INSURANCE COMPANY as successor-in-interest to ZURICH INSURANCE COMPANY, U.S. BRANCH<br><br>      Defendants. | No. 4:08-CV-01687-CAS |
| THE DOE RUN RESOURCES CORPORATION,<br><br>      Counter-Claimant,<br><br>v.<br><br>HARTFORD ACCIDENT AND INDEMNITY COMPANY and FIRST STATE INSURANCE COMPANY,<br><br>      Counter-Defendants. | |

**THE DOE RUN RESOURCES CORPORATION'S COMBINED REPLY IN
SUPPORT OF MOTION FOR REALIGNMENT AND TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION**

I.  **INTRODUCTION**

In a desperate attempt to preserve subject matter jurisdiction after erroneously alleging that Zurich is an Illinois company, when in fact it is a New York company like Doe Run, Hartford Accident and Indemnity Company and First State Insurance Company ("Hartford"), joined by Zurich-American Insurance Company ("Zurich") (collectively, the "Insurers"), have submitted opposition briefs that ignore key case law, and entirely misstate the status of the Eighth Circuit on the issue of subject matter jurisdiction.

The Insurers center their oppositions around the false premise that the Eighth Circuit has held that the "actual and substantial" test governs realignment for subject matter jurisdiction. To the contrary, the Insurers' centerpiece case, the Eight Circuit appellate opinion in <u>Universal Underwriters Ins. Co. v. Wagner</u>, from 1966, does <u>not</u> address what test for realignment applies and in what circumstances, and it actually cites to the "principal purpose" criteria. In fact, the most relevant holding in <u>Wagner</u> case for the present jurisdictional dispute, is that the Eight Circuit found the insurers belonged on the <u>same side</u> of that action, opposite the policyholder, to determine subject matter jurisdiction. This is consistent with the realignment requested by Doe Run. Furthermore, the district court cases that have followed <u>Wagner</u> have not perceived that case to create an "actual and substantial" test, as the Insurers suggest. Far from it. Rather the test that is most consistent with the precedent from this Circuit, the guiding case law from a majority of other Circuits, and the Supreme Court's holdings in <u>City of Indianapolis v. Chase Nat'l Bank</u>, is the "principal purpose" test set forth in Doe Run's motion.

Despite the Insurers' strained attempts to persuade this Court that there is a reasonable basis to have Hartford and Zurich on opposite sides of this litigation for

1

determining jurisdiction, the fundamental nature of this action is clear.  This is a coverage action by Hartford and Zurich (Doe Run's insurers) against Doe Run.  Zurich and Doe Run are both citizens of New York, and therefore there is no diversity jurisdiction and this action respectfully cannot proceed.

## II.     ARGUMENT

### A.     The Insurers Misstate The Holding In *Wagner*

Contrary to the Insurers' assertions, the holding in Universal Underwriters Ins. Co. v. Wagner, 367 F.2d 866 (8th Cir. 1966), does not constitute an affirmative decision by the Eighth Circuit to rely on the "actual and substantial" language rather than the "principal purpose" language outlined in City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941).[1]  In fact, the Wagner court cites to both the "principal purpose of the suit" and the "actual and substantial controversy" language from City of Indianapolis.  See Wagner at 870 ("It is the duty of the federal courts to look beyond the pleading and to arrange the parties according to their sides in the dispute. *The court must inquire into the 'principal purpose of the suit' and the 'primary and controlling matter in dispute.'  The controversy must be 'actual' and 'substantial.'*") (emphasis added); see also City of Indianapolis, 314 U.S. at 69 ("Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interests,' exists, is therefore not to be determined by mechanical rules.  *It must be ascertained from the 'principal purpose of the suit,' and the 'primary and controlling matter in dispute.'*  These familiar doctrines governing the alignment of parties for purposes

---

[1] Moreover, Hartford's assertion that there are two separate tests from which the Wagner court could have chosen misstates the holding of City of Indianapolis.

of determining diversity of citizenship have consistently guided the lower federal courts and this Court.") (internal citations omitted) (emphasis added).[2]

Although the Wagner court references both "actual and substantial" and "principal purpose," the holding does not directly address the proper standard for realignment. Indeed, because the issue of subject matter jurisdiction raised by the primary insurer in Wagner was based on the proposition that there was no controversy between the insured and the excess insurer due to a stipulation reached after the filing of the complaint, the court focused on the issue of timing and what stage of the litigation should be used to determine whether the parties should be realigned.

Moreover, the Wagner decision supports Doe Run's position. In particular, there the court concluded that the insurers' interests were aligned on one side of the dispute because both insurers sought to deny coverage to the insured. Here, Doe Run argues that Hartford and Zurich's interests are aligned because both seek to deny coverage to Doe Run based on alleged policy exclusions.

### B. The Eighth Circuit Has Not Conclusively Addressed The Issue At Hand

The Insurers have cherry-picked certain district court cases, and language from those cases, to support their assertion that the Eighth Circuit has rejected the "primary purpose" test. However, a more thorough review of the landscape reveals that, contrary to the Insurers' assertions, the post-Wagner decisions in the Eight Circuit have interpreted Wagner

---

[2] Hartford's reference to the holding in City of Indianapolis is intentionally misleading in that Hartford only refers to the "actual" and "substantial" language. Opposition at 3. Hartford fails to cite the portion of City of Indianapolis which specifically states that the realignment analysis must look at the "'principal purpose of the suit,' (citing East Tennessee, V. & G. R.R. v. Grayson, 119 U.S. 240, 244 (1886)) and the 'primary and controlling matter in dispute.'" (citing Merchants' Cotton Press v. Ins. Co., 151 U.S. 368, 385 (1894)). See City of Indianapolis, 314 U.S. at 69.

3

inconsistently, at best, on this issue. Indeed, several district courts in the Eighth Circuit have relied on Wagner for the application of the "primary purpose" test. Moreover, the "primary purpose" test has been applied by district courts within the Eighth Circuit, after Wagner, in circumstances that are factually analogous to those at issue here.

In Mission Insurance Co. v. Mackey, 340 F. Supp. 824 (W.D. Mo. 1971), the court applied the primary purpose test to a dispute between two insurers and an insured. Specifically, plaintiff Mission Insurance Company ("Mission") brought an action for declaratory relief against defendants MFA Mutual Insurance Company ("MFA") and James Mackey. Although Mission and MFA were originally on opposite sides of the dispute per the complaint, the court determined that the parties needed to be realigned because the primary purpose of the dispute was to determine whether defendant Mackey was covered by either of the Mission or MFA auto insurance policies. Mission and MFA argued that they should not be realigned because there was a dispute between them regarding which is the primary insurer and which is the excess insurer. See id. at 826. The court disagreed, stating, "where the issue of coverage is not at stake, the district court may appropriately refuse to entertain the issue between insurers 'disputing who is the primary or excess carrier.'" Id. (citing United States Fidelity & G. Co. v. Millers Mut. Fire Ins. Co., 396 F.2d 569, 571 n.2 (1968)). Accordingly the Mission court determined that:

> On the only issues currently litigable in this Court, however, *it is readily apparent that the interests of plaintiff and defendant MFA Mutual are identical*. As noted above, they are indisputably on the same side of the "permission" issue.
>
> * * *

4

>Clearly, on all factual issues before the Court, plaintiff and defendant MFA Mutual are on the same side.

Id. at 827, 829 (emphasis added).  As a result of realignment of the insurers, diversity was destroyed and the case dismissed.  See id. at 829.

The facts in Mission are analogous to the facts at issue here.  As pleaded, the First Amended Complaint in this action identified Hartford as the plaintiff and Zurich and Doe Run as the defendants.  However, Hartford's and Zurich's interests are identical and, as such, they should be realigned.  The Insurers both seek to prove that Doe Run is not entitled to coverage, and they rely on many of the same arguments as a basis for denial of coverage (*e.g.*, exclusions in the policies such as a pollution exclusion).  Compare Declaration of Marc Halpern filed in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Halpern Decl.") at Exhibits A ("As an initial matter, it appears that coverage is precluded by form G-2240-3 A, EXCLUSION – CONTAMINATION OR PLLUTION, contained within the Policies.  Based on our investigation to date and the limited documentation provided, there appears to be no evidence of pertinent sudden and accidental discharges from the Herculaneum lead smelting facility that would conform to the limited exception to the exclusion.") & B ("The Policies also contain form G-2240-2 A, EXCLUSION – CONTAMINATION OR POLLUTION . . . Based on our investigation to date and the documentation that you have provided, there appears to be no evidence of any sudden and accidental discharges from the Herculaneum lead smelting facility.  Therefore it appears that this exclusion may apply to bar coverage for damages in the Lawsuit.") with Halpern Decl., Exhibit C (Zurich Answer and Counterclaim (Docket No. 22) at 12 ("The Underlying Claims

5

are not covered under the Zurich Policies because they are excluded by the policies' Pollution Exclusions.")).

The case of <u>Financial Guaranty Ins. Co. v. Fayetteville</u>, 749 F. Supp. 934 (W.D. Ark. 1990), is another example of a district court within the Eighth Circuit applying the primary purpose test to realign parties where "undoubtedly the alignment was carefully crafted to attempt to manufacture federal court jurisdiction" <u>Id.</u> at 942.  Indeed, the court stated:

> In short, on one side of the lawsuit and it makes no difference which side, are the taxpayers seeking to invalidate everything that has been done in respect to the incinerator project, and on the other side are the governmental entities and the insurance carrier seeking a declaration that those actions are valid.  Thus, if there was ever a case in which the principles outlined in *Indianapolis v. Chase Nat. Bank, supra,* and *Dryden v. Dryden, supra,* and other cases, should be applied, this is it.  This court does not have subject matter jurisdiction on the basis of the diversity jurisdiction of 28 U.S.C. § 1332.

<u>Id.</u>; see also <u>Hipke v. Kilcoin</u>, 2002 U.S. Dist. LEXIS 26704 at *8 (D. Neb. Nov. 19, 2002) ("Courts are required to realign the parties to an action according to the parties' real interests to produce an actual substantial collision of interests.  'This is a practical not a mechanical determination and is resolved by the pleadings and the nature of the dispute.'  The determination of whether the 'necessary collision of interests exists ***must be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute***.'") (internal citations omitted) (emphasis added); <u>Polanco v. H.G. Fuller Co.</u>, 941 F. Supp. 1512, 1523 (D. Minn. 1996) ("The district court must 'penetrate the nominal party alignment and consider the parties' actual adversity of interest.'  Adversity is determined by looking toward the 'primary purpose' of, or 'primary issue' embraced by the litigation.").

Not only do the Insurers fail to direct the Court to the holdings in Mission, Fidelity and Hipke, Hartford omits key language from its citation to Greenblatt v. Boone County Nat'l Bank, 442 F. Supp. 1198 (W.D. Mo. 1978). In particular, Hartford cites to Greenblatt to support its assertion that the proper test in the Eighth Circuit is simply whether the controversy is "actual" and "substantial." See Opposition at 5. As with its citation to City of Indianapolis, Hartford misleads this Court by citing only selected text from Greenblatt. However, Greenblatt specifically states, "The court must inquire into '*the principal purpose of the suit*' and the '*primary and controlling matter in dispute*.' The controversy must be 'actual' and 'substantial.'" Id. at 1199-200 (emphasis added). In fact, it is clear that the Greenblatt court applied the principal purpose test when it stated, "[T]his controversy certainly could not be deemed 'actual' and 'substantial'; nor could it be deemed anything more than tangential to '*the primary and controlling matter in dispute*' or '*the principal purpose of the suit*.'" Id. at 1200 (citing Wagner, 367 F.2d at 870) (emphasis added). Accordingly, it is apparent that numerous district courts within the Eighth Circuit have relied on Wagner and City of Indianapolis and applied the "principal purpose" test rather than the "actual and substantial" test as the Insurers claim.

Finally, Hartford's reliance on Aetna Casualty & Surety Co. v. Dow Chemical Co., 44 F. Supp. 2d 870 (E.D. Mich. 1999), to support its assertion that the Eighth Circuit applies the "actual and substantial" test is without merit. Indeed, the statement by the Aetna court is merely dicta. Moreover, just as the parties here must be realigned, the Aetna court concludes that the parties must be realigned with the insured on one side of the dispute and the insurers on the other side of the dispute. See id. at 876 ("It is this Court's responsibility to

7

align Dow and the Insurers according to the primary dispute to ensure that there is a collision of interests between diverse parties sufficient to justify diversity jurisdiction. *The primary dispute here is whether the Insurers have a duty to defend and indemnify Dow. Disputes between the Insurers could become moot and thus are ancillary to the primary dispute.*") (emphasis added).[3]

### C.   When The Parties To This Action Are Aligned Based On The Primary Purpose Of This Litigation, Diversity Is Eliminated

The Insurers are unable to cite to even a single case to support their assertion that, under the principal purpose test, the parties are properly aligned. See, e.g., Hartford Opposition at 7. Indeed, all case law is to the contrary. The primary purpose of this litigation is clear – this is an insurance coverage action between a policyholder and its insurers. For example, if Doe Run is successful in defeating the pending underlying actions, or if it is determined there is no coverage for Doe Run, then the claims between Plaintiff Hartford and Defendant/Counterclaimant Zurich for contribution (which by nature are derivative and secondary to insurance claims) are moot. See Zurich Counterclaim ¶¶ 1-19 (Docket No. 22); United States Fidelity & Guaranty Co. v. Thomas Solvent Co., 955 F.2d 1085, 1091 (6th Cir. 1992) ("*[T]he insurer's duty to indemnify is the primary dispute*. The issue of contribution can only be addressed after the court has determined which of the various insurers have a duty to indemnify particular [] Parties. Moreover, if the insurers are held not to owe a duty to

---

[3] Furthermore, to the extent that the court in Aetna states that the Eighth Circuit applies the "actual and substantial" test, the court in United States Fidelity & Guaranty Co. v. A & S Mfg. Co., 48 F.3d 131 (4th Cir. 1995) references the Second and Seventh Circuits as applying that test, but does *not* mention the Eighth Circuit. See id. at 132 ("The circuits are currently divided over the appropriate standard for deciding whether to realign. The district court applied the principal purpose test which has been adopted in the Third, Sixth, and Ninth circuits. . . . USF&G urges this court to join the Second and Seventh Circuits in adopting the substantial controversy test.") (internal citations omitted).

8

indemnify any of the [] Parties, then the issue of contribution is moot. Therefore, it is clear that *the contribution issue is ancillary to the issue of whether the insurers have a duty to indemnify the [] Parties*.") (emphasis added); see also A & S Mfg. Co., 48 F.3d at 134 ("The district court found that the primary issue in the case was whether the insurers owe A&S a duty to defend . . . and a duty to indemnify . . . . The court found that any disputes existing among the insurers regarding contribution are ancillary to the primary issue of the duty to indemnify. It arranged the parties around this primary dispute, placing the insurers as plaintiffs and the insured as the defendant. . . . The district court's findings and conclusions with respect to realignment were proper.").

### D. Public Policy Supports Application Of The Primary Purpose Test Rather Than The Actual And Substantial Test

Unlike the "actual and substantial" test which the Insurers argue is applicable here, the "primary purpose" test represents proper interpretation of the Supreme Court's ruling in City of Indianapolis. The court in A & S Manufacturing Company stated:

> The substantial controversy test asks whether any actual and substantial conflict exists between the opposing parties. . . . ***This approach emphasizes the first sentence of Indianapolis's governing principles, but it cannot be reconciled with the remainder of that opinion.*** The requirement that a district court ascertain the "principal purpose of the suit and the primary and controlling matter in dispute" cannot be disregarded as mere surplusage. . . . ***Although the Court in Indianapolis considered additional controversies raised by the parties opposed to realignment, this does not validate a substantial controversy approach. The Court's examination of other controversies was simply to identify the principal purpose of the suit. The Court was confirming that the other controversies were not primary in the dispute***.

48 F.3d at 133 (emphasis added).

Not only is the "actual and substantial" test an improper interpretation of City of Indianapolis, but that test provides an incentive for parties to manipulate litigation in order to manufacture federal court jurisdiction where there should be none. In particular,

> The substantial controversy test allows parties to easily manipulate diversity jurisdiction. In many multiple party suits, some hypothetical adversity between diverse parties can be claimed as giving rise to a substantial controversy. Thus, the substantial controversy test allows diversity jurisdiction in a broad range of cases, limited only by the creative pleading of the plaintiff. The principal purpose standard, in contrast, allows parties to engage a federal forum in a narrower range of situations. This result comports with the mandate that courts carefully confine their diversity jurisdiction to the precise limits that the jurisdictional statute, pursuant to Article III, has defined.

Id.; see also Travelers Indemnity Co. of Illinois v. Metropolitan Life Ins. Co., 798 F. Supp. 156, 160-61 (S.D.N.Y. 1992) ("[T]his approach lends itself to manipulation that can defeat the legitimate purposes of the diversity jurisdiction – to protect foreign litigants from regional bias. In almost any dispute involving several participants, no matter how identically aligned two litigants are in practical reality, an imaginative lawyer can describe circumstances in which there might be adversity between them, and use this artifice either to achieve federal jurisdiction or to defense it in precisely the circumstances for which the diversity jurisdiction was intended.") Such incentives are contrary to public policy and provide a further basis for this court to apply the "primary purpose" test.

E. **Even If The "Actual And Substantial" Test Is Applied, The Parties Must Be Realigned**

Contrary to the Insurers' assertions, even under an "actual and substantial" test, the parties must be realigned and diversity is destroyed. In Travelers Indemnity Co.,

Travelers, one of Met's insurers brought an action for declaratory relief against Met and two of Met's other insurers, National and International Insurance Co. 798 F. Supp. at 157-58. "National counter-claimed against Travelers, cross-claimed against Met and brought a third party action against International." Id. at 158. Met moved to realign the parties on the grounds that Travelers' and National's interests were aligned even though National counter-claimed against Travelers and cross-claimed against Met. The court agreed that realignment was proper because there was no actual and substantial controversy between National and Travelers as both insurance companies were relying on similar policy language to deny coverage to Met. See id. at 161.

The facts in Travelers are analogous to those at issue here. Hartford has brought an action for declaratory judgment against Doe Run and Zurich. Zurich has counter-claimed against Hartford and cross-claimed against Doe Run. However, the reality is that Hartford and Zurich are on the same side of this dispute and seek to deny indemnity coverage to Doe Run. Accordingly, their interests are aligned and diversity is destroyed.

**F.    The Doctrine Of Ancillary Jurisdiction Does Not Resolve The Issue Of Alignment**

Zurich's reliance on the doctrine of ancillary jurisdiction is misplaced and does not resolve the jurisdictional shortcomings of the complaint. Indeed, Hartford named Zurich as a defendant along with Doe Run. However, Hartford's claim against Zurich is ancillary because the claim for contribution is only at issue if first both Doe Run is found liable in an underlying action and Hartford is found to owe a duty of indemnification to Doe Run. See United States Fidelity & Guaranty Co., 955 F.2d at 1089 ("Thus, despite the fact that there may be actual and substantial ancillary or secondary issues to the primary issue, the parties

11

should be aligned in accordance with he primary issue in an action."); A & S Mfg. Co., 48 F.3d at 134 ("A court trying the merits of this controversy would first have to decide whether the insurers were under any obligation to defend and indemnify A & S. If none, or only one, provided overage, the question of the insurers' liability to each other would be moot."). Therefore, Zurich's cross-claim against Doe Run is irrelevant and the doctrine of supplemental jurisdiction cannot protect the Insurers from proper realignment. See Equitable Life Ins. Soc'y v. Lafferty, 2003 U.S. Dist. LEXIS 2031, at *7-8 (N.D. Tex. Feb. 11, 2003) ("In determining alignment of the parties, the court examines only the primary claim in the suite. 'The determination of the primary and controlling matter in dispute does not include the cross-claims and counterclaims filed by the defendants. Instead it is to be determined by plaintiff's principal purpose for filing its suit.'") (internal citation omitted).

Moreover, if Zurich were permitted to salvage jurisdiction for this lawsuit, which never met the standard for subject matter jurisdiction in the first instance, by relying on the doctrine of ancillary or supplemental jurisdiction, then the requirement that the parties be aligned according to their primary purpose would lose all meaning. Such an interpretation turns supplemental jurisdiction principles on their head, and would permit the parties to manipulate federal courts for the purpose of obtaining subject matter jurisdiction, by having ancillary claims take precedence over primary claims in determining jurisdiction. Cf. Southwest Lime Co. v. Lindley, 12 F.R.D. 484, 485 (W.D. Ark. 1952) ("Cross-claims, like all cross-bills, and like compulsory counterclaims are considered as auxiliary or ancillary to the principal claim to which they are related, and the jurisdiction which supports that claim will support the cross-claim, at least where the original action was not brought collusively to give

12

the federal court jurisdiction over the cross-claim.") (citing 3 Moore's Federal Practice, § 13.36).

### III. CONCLUSION

For the foregoing reasons, Doe Run respectfully requests that the Court dismiss this action for lack of subject matter jurisdiction.

Dated: April 13, 2009

Respectfully submitted,

ABELSON | HERRON LLP

By: _____/s/ Marc D. Halpern_____
Marc D. Halpern
Gwendolyn M. Toczko
501 West Broadway, Suite 800
San Diego, CA 92101
(619) 618-7000 (telephone)
(619) 618-7001 (facsimile)
mhalpern@abelsonherron.com
gtoczko@abelsonherron.com

Heather L. Mayer
333 South Grand Avenue, Suite 1550
Los Angeles, CA 90071
(213) 402-1900 (telephone)
(213) 402-1901 (facsimile)
hmayer@abelsonherron.com

*Counsel for Defendant and Counter-Claimant*