UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HARTFORD ACCIDENT AND ) | |
| INDEMNITY COMPANY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:08-CV-1687 CAS |
| ) | |
| THE DOE RUN RESOURCES ) | |
| CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant The Doe Run Resources Corporation's ("Doe Run") Motion to Stay Counts One, Two and Three of plaintiffs' complaint. Plaintiffs Hartford Accident and Indemnity Company and First State Insurance Company (collectively "Hartford") oppose the motion to stay, as does defendant Zurich American Insurance Company ("Zurich"). For the following reasons, the motion will be denied.

**Background**

This is an insurance coverage action in which Hartford seeks declarations regarding its rights and obligations to indemnify Doe Run under certain primary and excess insurance policies issued to Doe Run's predecessors. Doe Run has been named as a defendant in a number of bodily injury and/or property damage lawsuits filed against it arising out of its operation of a lead smelter near Herculaneum, Missouri (the "Underlying Claims"). Some of the Underlying Claims have settled, including suits known as Warden and BNSF, and others remain pending (the "Pending Actions").[1]

---

[1] Grace Warden, et al. v. The Doe Run Resources Corp., et al., Case No. 022-10635 in the Circuit Court for the St. Louis, State of Missouri; and BNSF Railway Co. v. The Doe Run Resources Corp., et al., Case No. 052-1585 in the Circuit Court for the City of St. Louis, State of Missouri.

Hartford seeks a declaration that it has no obligation to indemnify Doe Run in connection with the Underlying Claims and, to the extent it has indemnity obligations to Doe Run, it is entitled to contribution from Zurich.

Zurich filed a cross-claim against Doe Run seeking a declaration that it has no duty to indemnify Doe Run with respect to the Underlying Claims, and a counterclaim against Hartford seeking a declaration that, in the event it is obligated to indemnity Doe Run for the Underlying Claims, it is entitled to an allocation from Hartford for all or part of the coverage owed to Doe Run. The Court has stayed Zurich's cross-claim against Doe Run pending the resolution of an earlier-filed lawsuit between Zurich and Doe Run in California on the issue of Zurich's coverage obligation.

Hartford's complaint seeks declarations that Hartford's primary insurance policies do not provide coverage to Doe Run for the Underlying Claims (Count I), that Hartford's umbrella and excess insurance policies do not provide coverage to Doe Run for the Underlying Claims (Count II), and that Hartford's policies do not provide coverage to Doe Run for the Warden and BNSF settlements (Count III). Doe Run filed a counterclaim against Hartford which, among other things, asserts claims seeking to require Hartford to indemnify it with respect to the Warden settlement (Counts VI and VII), and a claim asserting statutory vexatious refusal to pay with respect to the Warden settlement (Count VIII). Doe Run does not assert any counterclaims with respect to the BNSF settlement or the Pending Actions.

---

Doe Run identifies thirteen related cases as pending in the St. Louis Circuit Court. See Mem. Supp. Mot. Stay at 4-5. Doe Run describes these cases as "sister" actions to the now-settled Warden action, and states that many were filed by the same law firm and have nearly identical complaints to Warden. Id. at 10.

**The Parties' Positions**

Doe Run moves the Court to exercise its discretion to stay Hartford's claims against it in Counts One, Two and Three as a matter of judicial economy and to prevent Doe Run from suffering undue prejudice to its defense of the Pending Actions.

Doe Run contends that Hartford's claims against it are not ripe for adjudication because (1) Hartford's claim for declaratory relief in connection with the BNSF settlement does not satisfy the "actual controversy" requirement of the Declaratory Judgment Act, as the full amount of the BNSF settlement was paid by Zurich and there is no pending or unresolved indemnity coverage claim against Hartford by Doe Run; and (2) with respect to the Pending Actions, Doe Run has not yet suffered any losses and therefore has no indemnity dispute with Hartford, so Hartford is seeking to litigate hypothetical issues.

Doe Run asserts that if Hartford's claims concerning the Pending Actions go forward, it will be forced to engage in piecemeal litigation and duplicative discovery resulting in a costly "two-front war." Doe Run also asserts that a stay is necessary to avoid prejudicing its defense of the Pending Actions, because many of the same facts and legal issues that are the subject of Hartford's declaratory relief claims overlap with the facts and legal issues being litigated in the Pending Actions.[2] Doe Run

---

[2] In support of its prejudice assertions, Doe Run submits the affidavit of its separate defense counsel in the Pending Actions, Mr. Richard A. Ahrens, which states among other things that the consolidated trial of two of the Pending Actions, Browning and Dawson, is set for September 8, 2009 in state court, that the facts and legal issues in the two cases are "substantially identical" to those in the now-settled Warden action, and it is anticipated that much of the discovery conducted in Warden will be used by the plaintiffs in prosecuting Browning and Dawson. Counsel's affidavit lists ten factual and legal issues being litigated in the Pending Actions, and which would have been litigated in Warden had it not settled, and states that counsel is "informed that some of all of the issues . . . might also be contested issues in the present insurance coverage action." The affidavit concludes, "It is my judgment that litigation of any of these facts or legal issues in a separate coverage action while the [Pending Actions] are pending presents the risk of prejudice to Doe Run's defense in the [Pending Actions]." Ahrens Affidavit, Ex. 1 to Doe Run's Mem. Supp. Mot. Stay (Doc. 79).

also states that the factual and legal theories in at least some of the Pending Actions are "substantially identical" to those of the now-settled Warden case, and it anticipates much of the discovery conducted in Warden will be used by the other plaintiffs in prosecution of the Pending Actions.

Doe Run states that it seeks a "reasonably tailored stay" of Hartford's Counts One, Two and Three while the Pending Actions are ongoing, and to allow the indemnity coverage issues to ripen. Doe Run does not offer a specific termination date for the stay but states that many of the Pending Actions are set for trial in September 2009.

Hartford responds that a stay is not appropriate because its claims in Counts One, Two and Three are ripe for resolution and can be adjudicated without any prejudice to Doe Run. With respect to ripeness, Hartford states that a real and present dispute exists because Hartford believes it has no indemnity obligations for the Underlying Claims, including Warden and BNSF as well as the Pending Actions, and Doe Run disagrees. Hartford also states that Doe Run's counterclaims against it show the parties have a real and present dispute regarding their respective rights and obligations under the Hartford policies at issue, and notes that in pleading its counterclaims, Doe Run asserts that a justiciable controversy exists between it and Hartford. Hartford states that Doe Run does not contest the ripeness of its claim relating to the Warden action. Hartford asserts that its claim relating to the BNSF action is not moot because Zurich funded the settlement under a reservation of rights and seeks to recoup sums it has paid for settlement and, if Zurich is successful, Hartford could continue to face indemnity claims relating to BNSF in the future.[3]

---

[3]Hartford also asserts that "Doe Run has not withdrawn its claims for indemnity against Hartford." Pls.' Opp. Mot. Stay at 8. Doe Run did not assert a counterclaim seeking indemnity for the BNSF settlement, and its Counterclaim states in part, "The BNSF Lawsuit settlement was funded by other insurance than the Hartford A&I Policies and, as a result, there is no pending Hartford coverage obligation to Doe Run for that lawsuit." Counterclaim, ¶ 21. The Court is uncertain exactly what Doe Run claims for indemnity Hartford is referring to.

4

With respect to the Pending Actions, Hartford asserts that the common practice in both federal and Missouri courts is to allow insurers to pursue declaratory judgment actions in the absence of a final settlement or judgment in order to establish rights and obligations under insurance policies, as long as sufficiently complete facts have been established to resolve the matter conclusively. Hartford states that the controversy between it and Doe Run is sufficiently concrete to permit a conclusive adjudication with respect to Warden, BNSF and the Pending Actions. In support, Hartford states that the Warden action was pending almost six years when it was settled shortly prior to trial, and Doe Run has alleged in its counterclaim that this nucleus of operative facts gives rise to an actual controversy with respect to the existence and extent of indemnity coverage under Hartford's policies.

Hartford also states that the facts developed in the Warden action will undoubtedly form the core facts at issue in this coverage action, and that Doe Run acknowledges this case and the Pending Actions will draw heavily from facts developed in Warden, including Doe Run's operations at the Herculaneum site, the pollution resulting from Doe Run's operations, its knowledge concerning the effect of its operations, and Doe Run's efforts to remediate the pollution caused by its operations. Hartford states that by Doe Run's own admission, the Pending Actions present "very similar allegations and theories" to those advanced in Warden and, as such, the Pending Actions present the same alleged injuries and stem from the same set of operative facts already litigated in Warden. Hartford contends that these admissions undermine Doe Run's argument and support its own argument that there is no need to wait for the Pending Actions to be resolved to determine the parties' respective rights and obligations.

Hartford contends this coverage action poses no risk of prejudice to Doe Run's handling of the Pending Actions because, to the extent the actions may overlap and potential prejudice may exist, the Court can enter protective and/or sealing orders. Hartford states that this action will not be impermissibly used as a vehicle for determining facts at issue in the Pending Actions, or to prevent Doe Run from having a full opportunity to present its defenses in state court, as the coverage action will focus on the facts necessary to determine Hartford's contract rights and obligations, such as whether the Herculaneum smelter releases or discharges "pollutants" and whether the "Exclusion Endorsement" in the Hartford policies bars coverage. Hartford also asserts that Doe Run's prejudice argument ignores that Hartford's Counts One and Three will center largely on the same set of facts and evidence developed in Warden, which are already known. Finally, Hartford asserts that it will be prejudiced by an indefinite stay of the coverage action until all of the Pending Actions are resolved, because Doe Run is demanding that Hartford fund the settlement of these cases and Hartford is entitled to a determination whether it is obligated for these claims--so Hartford is being subjected to the choice of funding a settlement for which it may not be responsible or risking allegations of potential liability if it refuses to participate.[4]

In its Reply memorandum, Doe Run appears to limit its stay request for a period of six months, until after conclusion of the two trials in Pending Actions scheduled in September and October 2009, and underlying mediations scheduled for July 2009. Doe Run contends it would not be unfair to ask Hartford to wait this length of time, as Hartford issued only two years of primary coverage to Doe Run and has not been required to pay anything to Doe Run.

---

[4]Hartford suggests that to the extent Doe Run believes the facts surrounding Warden are more concretely established than those in the Pending Actions, discovery in this case could be phased so that the parties focus initially on Hartford's Count One, relating exclusively to Warden.

With respect to ripeness, Doe Run states its counterclaim assertion that a justiciable controversy exists regarding Warden is not an admission the controversy is ripe for resolution or that a stay is not needed. Rather, Doe Run states that because it has an outstanding coverage demand against Hartford, it had no choice but to assert the claims regarding Warden in its Answer and Counterclaim. Doe Run contends there is no justiciable controversy as to the BNSF settlement and Hartford's claims are not ripe because the counterclaim does not assert any claims against Hartford for indemnification.

As to prejudice, Doe Run states that Hartford has not responded to the affidavit of Doe Run's defense counsel concerning the overlap between Hartford's coverage defenses and the issues being defended by Doe Run in the Pending Actions, and offers no evidence to counter the "undeniable conclusion of defense counsel that Doe Run's defense efforts could be significantly prejudiced without the requested stay." Doe Run Reply at 2. Doe Run asserts that a protective order will not prevent prejudice, because it will not prevent the use of discovery from this action in the Pending Actions. Doe Run asserts that the state court would have no obligation to abide by this Court's protective order and if Hartford were to depose the underlying plaintiffs or seek other discovery directly from them, it could prejudice Doe Run by the questions it asks or the exhibits it references.

Doe Run states that plaintiffs in the Pending Actions have been very aggressive in seeking discovery from other actions involving Doe Run.[5] Doe Run asserts that a protective order will not

---

[5]In support of its Reply, Doe Run submits the supplemental affidavit of Mr. Ahrens, which states in part that in an earlier, unspecified case, counsel in the consolidated Browning/Dawson case attempted to obtain transcripts from depositions in other cases in which Doe Run was a defendant by serving subpoenas on the court reporters who transcribed the deposition testimony in those cases, and in a recent deposition in the Browning/Dawson case, plaintiffs' counsel asked questions from a deposition transcript given by a Doe Run employee in a litigation in Oklahoma.

prevent the underlying plaintiffs from using filings and rulings in this action against Doe Run in the Pending Actions, and that defense arguments raised in this action could be adopted by the underlying plaintiffs; for example, a defense contention that Doe Run's losses arise from "intentional acts" could be adopted by the underlying plaintiffs to support their case at trial regarding Doe Run's knowledge and intent. Doe Run also contends that if the coverage case "gets out in front of" the Pending Actions, its underlying defense could suffer prejudice from any rulings in this action that overlap with issues in the Pending Actions.[6] Finally, Doe Run asserts that a stay of the case would be consistent with its efforts to mediate with Hartford, permitting the parties to avoid additional litigation costs and entrenchment while they attempt to settle.

**Discussion**

As a threshold matter, the Court notes that Doe Run specifically states it does not ask the Court to engage in an abstention analysis, but rather relies on the exercise of the Court's discretion and its inherent authority to stay this matter. In opposing the motion to stay, Hartford does not assert that the Court should apply the six-factor test from Scottsdale Insurance Co. v. Detco Industries, Inc., 426 F.3d 994 (8th Cir. 2005), which is used to determine whether a federal court should retain jurisdiction over a declaratory judgment action when the state proceeding is not a parallel proceeding with the same parties and the same issues.[7] Accordingly, the Court examines the motion before it

---

[6]At minimum, Doe Run urges the Court to adopt its discovery phasing proposal so that in Phase 1, Hartford and Doe Run would only litigate issues that do not overlap with the Pending Actions, such as policy existence and terms, whether Doe Run is an insured under the policies, and Doe Run's counterclaims regarding disclosure of confidential information.

[7]Defendant Zurich filed an opposition memorandum to Doe Run's motion to stay, although the motion was not directed to Zurich's claims. In its opposition, Zurich argues that Doe Run's motion essentially seeks abstention and that the Scottsdale test should apply to the Court's analysis. Because the motion to stay concerns Hartford's claims, and Hartford has not raised this argument, the Court does not address Zurich's contentions.

8

based on the arguments made by the parties concerning the appropriate exercise of its discretion and inherent authority.

The Court first addresses the ripeness of Hartford's claims. Hartford's claims concerning its potential liability with respect to the underlying Warden action are ripe for resolution. The Warden case is settled and Doe Run has demanded that Hartford contribute toward the settlement. Hartford is entitled to a determination of its potential liability with respect to Warden.

It is less clear whether Hartford's claims concerning the BNSF action, which also settled, are ripe. Although Doe Run does not assert a counterclaim concerning BNSF, and the parties agree Zurich fully funded that settlement, Doe Run did ask Hartford to commit to funding the BNSF settlement. See Doe Run Counterclaim, ¶¶ 19-20. If Zurich were to prevail on its coverage claims against Doe Run it is possible Doe Run would demand coverage from Hartford. Neither party has provided the Court with citation to relevant case law with respect to whether a claim such as this may be considered ripe, but rather merely rely on unsupported argument.

"To be ripe for decision, the harm asserted must have matured enough to warrant judicial intervention. The plaintiffs need not wait until the threatened injury occurs, but the injury must be certainly impending." Paraquad, Inc. v. St. Louis Housing Auth., 259 F.3d 956, 958-59 (8th Cir. 2001) (internal quotation marks and citations omitted). Although the Court has some doubt as to whether Hartford's BNSF claim is ripe, the issue has not been adequately presented in the parties' memoranda. Moreover, the Court does not believe the ripeness of the BNSF claim is determinative of whether Hartford's claims in Counts One, Two and Three should be stayed, in part because the claims in the underlying BNSF action were different from those asserted in the more closely-related

Warden and Pending Actions. If Doe Run believes the BNSF claim is not ripe, it may file an appropriate motion raising that issue.

With respect to the Pending Actions, the Supreme Court and the Eighth Circuit have held that a declaratory judgment action may be justiciable despite the pendency of underlying litigation or the presence of unresolved facts. See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 243 (1937) (declaratory judgment action seeking resolution of an insured's coverage was justiciable; rejecting the contention that a declaratory judgment action would be premature merely because it turns on questions of fact); Aetna Cas. & Sur. Co. v. General Dynamics Corp., 968 F.2d 707, 709 (8th Cir. 1992) (insurer's action seeking declaratory judgment that it had no duty to defend or indemnify the insured in claims brought against the insured for alleged environmental pollution were justiciable even though facts remained unresolved in the underlying dispute, and no suits had been filed or settlements achieved); see also St. Paul Guardian Ins. Co. v. Shannon & Wilson, Inc., 2006 WL 1479521, at *3 (E.D. Mo. May 25, 2006) (refusing to stay declaratory judgment action seeking determination that insurer had no duty to defend or indemnify; rejecting argument that the coverage question is essentially hypothetical until liability has been determined). The Eighth Circuit has explained that as long as the dispute presented is real and immediate, rather than abstract, there is a "live justiciable controversy between the parties sufficient to invoke the jurisdiction of the district court." Aetna, 968 F.2d at 711 (citing Aetna Life Ins., 300 U.S. at 227).

In this case, there are numerous underlying suits and Doe Run has made a demand for indemnity costs from Hartford with respect to those suits. Under these circumstances, there is a live justiciable controversy between the parties with respect to the Pending Actions. This conclusion is bolstered by the fact that, as Doe Run acknowledges, the Pending Actions present very similar

allegations and theories to those advanced in Warden, and this case and the Pending Actions will draw heavily from facts developed in Warden, including Doe Run's operations at the Herculaneum site, the pollution resulting from Doe Run's operations, its knowledge concerning the effect of its operations, and Doe Run's efforts to remediate the pollution caused by its operations.

With respect to the issue of prejudice, Doe Run fails to convince the Court that it will suffer severe prejudice if Hartford's Counts One, Two and Three are not stayed pending resolution of at least some of the Pending Actions. This is for several reasons. To the extent Hartford's claims concern its potential coverage obligations for the Warden and BNSF actions, those cases are settled and no prejudice can arise to Doe Run from Hartford's prosecution of coverage issues concerning them. As to the Pending Actions, Doe Run's claim of severe prejudice is not particularly persuasive because so many of the same facts and issues litigated in the long-pending Warden action are also at issue in the Pending Actions. The Pending Actions listed by Doe Run were filed in 2005 and those cases have trial settings, some as close as two months from now. Substantial discovery into relevant facts and theories therefore has already occurred both in Warden and the Pending Actions. Doe Run's contention that discovery into coverage issues will somehow cause underlying plaintiffs' counsel to suddenly discover new theories of liability in the Pending Actions is questionable.

While Doe Run's concern that rulings in the coverage case will "get out in front of" of the Pending Actions and influence them is legitimate, it is based on conjecture at this point, particularly given the status of those cases in contrast to the coverage case. No Case Management Order has been issued in this case although a scheduling conference was held, the Court is not aware that discovery has begun, and no dispositive motions are pending. The Court does not wish to interfere with the state court's handling of the Pending Actions, and would be reluctant to decide in a

11

declaratory judgment action disputed facts that are material to resolution of those actions, but such a concern is largely theoretical at this time. The affidavit of Mr. Ahrens, Doe Run's counsel in the Pending Actions, although unopposed, merely states that he "is informed" that some of the issues present in the Pending Actions "might also be contested issues" in the coverage actions, and offers the unsupported conclusion that "litigation of any of these facts or legal issues" in the coverage action "presents the risk of prejudice to Doe Run's defense" in the Pending Actions. Ahrens Aff., ¶ 11. The affidavit is speculative and does not establish a likelihood of prejudice.

Further, although there will be some common facts and potentially overlapping issues between the coverage case and the Pending Actions, the actions are by no mean analogous and this lessens the likelihood of serious prejudice to Doe Run. The coverage action will focus on facts necessary to determine Hartford's claims on its rights and obligations under the insurance policies it issued to Doe Run, and on interpretation of the policies' terms. In contrast, the Pending Actions involve issues of Missouri tort law and will focus on Doe Run's conduct in operating the Herculaneum smelter, the plaintiffs' exposure and claimed damages, and causation.

The possibility of prejudice to Doe Run can be lessened through the use of protective orders and, to the extent necessary and appropriate, sealing of portions of the file. Both parties have suggested that discovery could be phased in ways to alleviate potential prejudice. The Court will consider these suggestions and whether it is appropriate to conduct another scheduling conference to discuss the discovery schedule.

Finally, the Court cannot agree with Doe Run's assertion that a stay of this action will assist the parties in resolving the case through mediation. Without a determination of Hartford's duty to indemnify Doe Run, it will be uncertain whether Doe Run or Hartford will bear the ultimate financial

liability for the settlement or judgment of any of the Underlying Claims. Although such uncertainty does not preclude the parties from settling their dispute without a substantive ruling from this Court, it does place Hartford in the position of being unable to determine whether coverage exists and could actually discourage settlement of both this case and the Pending Actions. See Federal Ins. Co. v. Sammons Fin. Group, Inc., 595 F.Supp.2d 962, 973 (S.D. Iowa 2009) (citing ACandS, Inc. v. Aetna Cas. & Sur. Co., 666 F.2d 819, 823 (3d Cir. 1981) (discussing the "overwhelming number of [insurance] disputes that are resolved by settlement and the need to resolve coverage disputes in order to discern whether the insurer or the insured bears 'the onus and risks of settlement'")).

**Conclusion**

For the foregoing reasons, the Court will deny Doe Run's motion to stay Hartford's claims in Counts One, Two and Three. The Court will either issue a Case Management Order based on the Rule 16 conference held on June 9, 2009, or set another scheduling conference in the near future.

Accordingly,

**IT IS HEREBY ORDERED** that The Doe Run Resources Corporation's Motion to Stay Counts One, Two and Three of plaintiffs' complaint is **DENIED**. [Doc. 78].

                                                                           **CHARLES A. SHAW**
                                                                           **UNITED STATES DISTRICT JUDGE**

Dated this __24th__ day of July, 2009.