UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

HARTFORD ACCIDENT AND          )
INDEMNITY COMPANY, et al.,       )
                                )
          Plaintiffs,           )
                                )
     v.                         )          No. 4:08-CV-1687 CAS
                                )
THE DOE RUN RESOURCES           )
CORPORATION, et al.,            )
                                )
          Defendants.           )

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiffs Hartford Accident and Indemnity Company and First State Insurance Company's (collectively "Hartford") Motion for Partial Summary Judgment that the Underlying Claims Arise Out of the Release of Pollutants.[1] Defendant The Doe Run Resources Corporation ("Doe Run") opposes the motion, and it is fully briefed. For the following reasons, the motion will be denied without prejudice. Doe Run's Motion for Continuance of Hartford's Motion for Partial Summary Judgment will be denied as moot.

**Background**

In this action, Hartford seeks declarations regarding its rights and obligations to indemnify Doe Run under certain primary and excess insurance policies issued to Doe Run's former corporate parent, Fluor Corporation. Doe Run has been named as a defendant in a number of bodily injury and/or property damage lawsuits filed against it arising out of its operation of a lead smelter near Herculaneum, Missouri (the "Underlying Claims"). Some of the Underlying Claims have settled,

---

[1]Although both Hartford and First State bring the instant motion, the motion focuses only on policies issued by Hartford.

including suits known as <u>Warden</u> and <u>BNSF</u>,[2] and others remain pending.  As relevant here, Hartford's Complaint seeks a declaration that it has no obligation to indemnify Doe Run in connection with the Underlying Claims.  One of Hartford's defenses rests on the pollution exclusion contained in its policies.

In the instant motion, Hartford seeks a partial summary judgment declaring that under its two primary policies issued to Fluor Corporation for the periods June 1, 1984 to June 1, 1985, and June 1, 1985 to June 1, 1986, the Underlying Claims arise from a release, escape, discharge or dispersal of pollutants, irritants or contaminants, and therefore coverage is barred by the policies' pollution exclusion.

**Summary Judgment Standard**

The standards applicable to summary judgment motions are well settled.  Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party.  <u>City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.</u>, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing

---

[2]<u>Grace Warden, et al. v. The Doe Run Resources Corp., et al.</u>, Case No. 022-10635 in the Circuit Court for the St. Louis, State of Missouri; and <u>BNSF Railway Co. v. The Doe Run Resources Corp., et al.</u>, Case No. 052-1585 in the Circuit Court for the City of St. Louis, State of Missouri.

there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004).

**Discussion**

A. Missouri Insurance Principles

Under Missouri law, the interpretation of the meaning of an insurance policy is a question of law. Capitol Indem. Corp. v. 1405 Associates, Inc., 340 F.3d 547, 547 (8th Cir. 2003). The general rules for interpretation of contracts apply to insurance policies. Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 301-02 (Mo. 1993) (en banc). "Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written." Krombach v. Mayflower Ins. Co., 827 S.W.2d 208, 210 (Mo. 1992) (en banc) (citations omitted). See also Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 209

(Mo. Ct. App. 1995) ("In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties."). An interpretation of insurance policy language which may render a portion of the policy illusory "should not be indulged in." Cano v. Travelers Ins. Co., 656 S.W.2d 266, 271 (Mo. 1983) (en banc).

"If the language is ambiguous, it will be construed against the insurer." Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo. 1993) (en banc) (internal citations omitted). "Insurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage." Nixon v. Life Investors Ins. Co. of America, 675 S.W.2d 676, 679 (Mo. Ct. App. 1984). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." Peters, 853 S.W.2d at 302. Insurance policy language is ambiguous when it is reasonably open to different constructions. Lincoln County Ambulance Dist. v. Pacific Employers Ins. Co., 15 S.W.3d 739, 743 (Mo. Ct. App. 1998). To test whether the language used in the policy is ambiguous, the language is considered in the light in which it would normally be understood by the lay person who bought and paid for the policy. Kellar v. American Family Mut. Ins. Co., 987 S.W.2d 452, 455 (Mo. Ct. App. 1999). If an insurance "contract promises something at one point and takes it away at another there is an ambiguity." Behr v. Blue Cross Hosp. Service, Inc., of Mo., 715 S.W.2d 251, 256 (Mo. 1986) (en banc).

"Exceptions and limitations contained in insurance policies should be construed strictly against the insurer." Standard Artificial Limb, 895 S.W.2d at 209. When an insurance company seeks to escape coverage based on a policy exclusion, the burden is on the insurer to establish that the exclusion is applicable. American Family Mut. Ins. Co. v. Bramlett ex rel. Bramlett, 31 S.W.3d 1, 4 (Mo. Ct. App. 2000). "Unless an insurance contract is so clear in its meaning that as a matter of

law it precludes a plaintiff's recovery, a motion for summary judgment based on the contract should be denied."  Northland Ins. Cos. v. Russo, 929 S.W.2d 930, 934 (Mo. Ct. App. 1996).

B.  The Pollution Exclusion

The Hartford insurance policies at issue contain the following exclusion for injury or damage arising out of pollutants (the "Pollution Exclusion"):

> It is agreed that the insurance does not apply to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.[3]

C.  The Parties' Positions

Hartford moves for partial summary judgment based on the Pollution Exclusion, arguing that under Missouri law the Underlying Claims arise from a release or discharge of pollutants, irritants or contaminants.  Hartford asserts that the Underlying Claims arise out of the release of lead emissions from Doe Run's lead smelter in Herculaneum, and that these emissions "fit comfortably" within the Pollution Exclusion physically as "smoke," "vapors," "fumes," and "toxic chemicals, liquids or gases," and functionally as "waste materials," "contaminants," and "pollutants."  Hartford asserts that in ordinary usage, lead is routinely described as a pollutant, and well before the policies were issued the Environmental Protection Agency listed lead as an "air pollutant" that "may reasonably be anticipated to endanger public health or welfare."  42 U.S.C. § 7408(a)(1)(a).  Hartford also asserts that Doe

---

[3]Hartford states that under applicable Missouri choice-of-law rules, Missouri law governs the resolution of its motion because there is no conflict between the laws of Missouri and California, the two states with the most significant relationships to the case, citing, inter alia, Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co., 325 F.3d 1024, 1028 (8th Cir. 2003); Restatement (Second) of Conflict of Laws, §§ 188, 193.  Doe Run agrees that Missouri law should apply.  The Court will apply Missouri law to interpretation of the policies.

Run conceded to the Missouri Department of Natural Resources ("DNR") in 1990 that its smelter emits "lead, among other pollutants, an air contaminant within the meaning of chapter 643 RSMo."

Hartford states that Missouri court decisions provide support for the conclusion that lead emissions are pollutants citing, among other cases, Cincinnati Insurance Co. v. German St. Vincent Orphan Ass'n, Inc., 54 S.W.3d 661 (Mo. Ct. App. 2001) (holding that friable asbestos was an "irritant" or "contaminant" within the meaning of insurance policy's pollution exclusion). Hartford also cites Missouri cases for the proposition that the terms "pollutant" and "contaminant" in pollution exclusions should be construed in accordance with their ordinary meaning to preclude coverage as a matter of law, citing American Western Home Insurance Co. v. Utopia Acquisition L.P., 2009 WL 792483, at **2-3 (W.D. Mo. Mar. 24, 2009); Heringer v. American Family Mutual Insurance Co., 140 S.W.3d 100, 104-06 (Mo. Ct. App. 2004); and Casualty Indemnity Exchange v. City of Sparta, 997 S.W.2d 545, 550-52 (Mo. Ct. App. 1999).

Doe Run responds that Hartford's motion is misleading because it only discusses the smokestack emissions from the Doe Run smelter, and these emissions constitute only a part of Underlying Claims. Doe Run asserts that one of the main alleged sources of lead exposure in the Underlying Claims is the actual commercial lead produced, transported, smelted and sold by Doe Run, which is a valuable metal material distinct from the smokestack fumes, and is not identified anywhere in the policies as a pollutant.[4]

---

[4]Doe Run's separate statement of material facts includes the following facts which Hartford has not controverted:

Doe Run is the largest integrated lead metal producer in the Western Hemisphere. Doe Run handles every aspect of lead mining, milling, smelting, fabrication and recycling. The process begins with Doe Run's mining operations that extract ore containing lead metal deposits. The ore is either crushed underground and hoisted to the surface through an ore shaft or brought directly to the surface for primary crushing. It is then further processed at a mill, typically located near the mine.

Doe Run contends that Hartford's motion is an "unfounded effort to force this Court to rule that Doe Run's primary business materials and mining products are excluded from coverage, rendering the general liability insurance contracts illusory for Doe Run." Mem. Opp. at 1. Doe Run asserts Missouri law is clear that where a substance at issue is a useful material, it does not constitute a pollutant, particularly where that substance is one of the insured's principal commercial materials or products. Doe Run also asserts that under Missouri law a pollution exclusion is ambiguous where there is any room for competing interpretations, or where the insurer could easily have identified the alleged pollutant in the pollution exclusion or in a separate exclusion, but did not.

Doe Run states that the Underlying Claims include a broad set of allegations concerning the mining, use, loading, transporting and unloading of lead concentrate, which is its primary raw commercial material. Doe Run quotes from the petition in one of the Underlying Claims, <u>Warden</u>, which it states is similar to the other petitions:

> At all times herein mentioned, defendants, and each of them, were negligent and careless as aforedescribed and in one or more of the following respects: (a) Permitted lead and other harmful metals and substances to be mined, generated, smelted, processed, released, dumped, deposited and placed into the air and deposited onto the land when defendants knew, or by the exercise of ordinary care should have known, that the **mining, generating**, smelting, releasing, dumping, depositing, **handling, storing, treating, transporting, loading, unloading** and disposing of [lead, metals and other substances] was dangerous and harmful to the public, and more particularly, plaintiffs . . .

---

Once the ore is crushed and ground at Doe Run's mills, the resulting lead concentrate is then transported to Doe Run's Herculaneum smelter or sold on the world market. Lead concentrate, even before smelting, is a useful and commercially valuable material. In fact, most other lead metal producers sell lead concentrate as their end-product, rather than proceeding to the smelting process. The primary component of the lead concentrate is lead sulfide, also known as galena. Once the galena has gone through the smelting process, the end result is lead metal that is 99.9% pure and is sold by Doe Run. Some lead metal is provided to Doe Run's fabricating unit, Fabricated Products, Inc., where the lead is processed into various forms used in items such as radiation shielding and car batteries.

<u>Warden</u> Petition, ¶ 49(a) (emphasis added).  Doe Run contends that lead concentrate has been a significant subject matter of litigation in the Underlying Claims, with extensive discovery, expert work and discussion with the plaintiffs, and supports this contention with an affidavit of its counsel in the Underlying Claims litigation.   Thus, Doe Run contends that the Underlying Claims are not "smokestack" cases.

Doe Run argues that because the Pollution Exclusion does not include the term "lead" in the definition of "pollutant," it is ambiguous with respect to lead concentrate, citing <u>Hocker Oil Co. v. Barker-Phillips-Jackson, Inc.</u>, 997 S.W.2d 510, 518 (Mo. Ct. App. 1999) (holding that insurer's "failure to identify 'gasoline' as a pollutant in its pollution exclusion resulted in uncertainty and indistinctness" in a policy issued to a gasoline station, and the policy was therefore ambiguous).  Doe Run cites the deposition testimony of Hartford's corporate designee as admitting that what constitutes a "pollutant" under the Pollution Exclusion is ambiguous, because it is determined on a case-by-case basis.  Doe Run argues this is an admission Hartford did not write the Pollution Exclusion with sufficient clarity to provide policyholders certainty as to what is being excluded.  Doe Run asserts that when the Pollution Exclusion is viewed in a manner that will protect its reasonable expectations, lead is not a pollutant because it did not logically consider the metal that it mines, processes and sells to be pollution, as it is a useful material sold on the open market as a valuable metal.  Doe Run asserts this case is analogous to <u>Hocker Oil</u>, where the Missouri Court of Appeals found the pollution exclusion did not bar coverage because it could not have been intended to apply to an insured's primary potential business liability.

Doe Run also asserts that Hartford's failure to incorporate a lead exclusion into the language of the Pollution Exclusion or to add a separate lead exclusion bars it from arguing after the fact that

8

lead liability is excluded. Doe Run notes that lead-specific exclusions were being used in the insurance industry as early as 1984, and Hartford subsequently included lead exclusions in its policies. Doe Run contends this constitutes an admission that the Pollution Exclusion as drafted is ambiguous.

Finally, Doe Run denies Hartford's contention that Doe Run admitted lead is a pollutant by signing the DNR administrative orders. First, Doe Run states it is clear that the cited orders deal solely with smelting emissions, and not lead concentrate. Second, Doe Run states that provisions in the orders state that Doe Run did not admit any liability or fault, and asserts that it did not intend to make any admission regarding pollution or coverage issues by signing the documents prepared by the DNR.

Hartford replies that its motion "raises one question: whether lead is a pollutant." Reply at 1. Hartford asserts that the term "pollutants" as used in the policies unambiguously includes lead, because under Missouri law, words in an insurance policy are to be understood in their ordinary and popular meaning, and lead is a pollutant in that meaning. Hartford cites various decisions in which lead has been labeled a pollutant, and Casualty Indemnity, 997 S.W.2d at 550-51, in which it states the Missouri Court of Appeals found as a matter of law that lead-containing sludge was excluded from coverage by the pollution exclusion, even though the exclusion did not specifically exclude either lead or sludge. Hartford states that under Doe Run's reasoning, the Pollution Exclusion does not exclude anything because it does not specify any pollutant by name, but this result would be contrary to Missouri rules of construction, because it would render a portion of the policy illusory.

Hartford further replies that Doe Run cites no authority to support its proposition that by adding a separate lead exclusion to certain policies issued to other insureds a decade later, Hartford

has conceded that the Pollution Exclusion does not cover lead. Hartford also states that the absence of a lead-specific exclusion does not undermine the Pollution Exclusion or reverse its effect, or indicate an intent to provide coverage for personal injury or property damage claims arising out of the discharge, dispersal or release of lead, citing Truck Insurance Exchange v. Heman, 800 S.W.2d 2, 4 (Mo. Ct. App. 1990) (stating that exclusions do not endow coverage, and "there is no reason to find that coverage was created by the fact that an exclusion could have been added to the policy but was not.").

Hartford states that Doe Run's ambiguity argument is not only inconsistent with Missouri case law, but is rebutted by the facts, because Doe Run acknowledged in the consent order entered with the DNR that its smelter emitted "lead, among other pollutants," and thus has conceded that it regards lead as a pollutant. The fact that Doe Run did not admit liability or fault is not the issue, but rather whether lead is a pollutant, and whether or not Doe Run intended to make any admission, it signed an official consent decree stating that lead is a pollutant and thereby memorialized its understanding of the term "pollutant."

Hartford asserts that Doe Run's assertions concerning its reasonable expectations fail for several reasons. First, Missouri's reasonable expectations rule cannot be used to construe unambiguous policy terms and, here, lead is unambiguously a pollutant. Second, Hartford issued the policies to Fluor Corporation, not Doe Run, and Fluor Corporation was a construction firm whose business operations spanned a wide variety of potential risks, so coverage under the policies would not be illusory merely because they exclude coverage for lead-related claims against Doe Run. Third, the record does not support any inference that Doe Run did not believe lead was a pollutant, particularly given its signing of the DNR consent order in 1990 which states that lead is a pollutant.

Hartford states that Doe Run is actually arguing it did not believe lead concentrate was highly toxic in the 1980s, but the issue is whether lead is a pollutant, not whether it was a highly toxic pollutant, and even at the time the policies were issued, case law abounded in references to lead as a pollutant. Hartford also states that Doe Run's arguments concerning the useful nature of lead concentrate do not assist its position, as Doe Run does not sell lead concentrate or contend lead concentrate is its final product and, moreover, whether a product is useful does not determine whether it is a pollutant. Thus, Hartford asserts that the instant situation is distinguishable from Hocker, because lead emissions are not the product Doe Run sells, unlike the spilled gasoline in Hocker.

    D.  Analysis

Under Missouri law, the Court must strictly construe the Pollution Exclusion against Hartford. See Standard Artificial Limb, 895 S.W.2d at 209.  Hartford bears the burden to establish that the exclusion is applicable.  See American Family Mut. Ins., 31 S.W.3d at 4.  The Court is mindful that "[u]nless an insurance contract is so clear in its meaning that as a matter of law it precludes a plaintiff's recovery, a motion for summary judgment based on the contract should be denied." Northland Ins., 929 S.W.2d at 934.

As Hartford has made clear, the issue it presents in the motion for partial summary judgment is the very broad proposition "whether lead is a pollutant."  Reply at 1.  The motion is not limited to the issue whether smokestack emissions are pollutants.  On the record that currently exists before it, the Court cannot state as a matter of law that lead, in all of its forms as relevant here, is a pollutant within the meaning of the Pollution Exclusion.  Doe Run has established the existence of material facts concerning whether the Underlying Claims arise out of, in addition to smelter emissions, Doe Run's activities in "mining, generating, smelting, releasing, dumping, depositing, handling, storing,

treating, transporting, loading, unloading and disposing of [lead, metals and other substances]," and that it may have reasonable expectations for coverage with respect to some of those activities  Doe Run has also established that lead is a useful commercial product for which there is significant demand.  The Court believes it would be premature and overly simplistic to hold as a matter of law, on the existing record, that "lead is a pollutant" under the Pollution Exclusion.

The Pollution Exclusion does not, as Doe Run observes, specifically list lead as a pollutant. The Court finds that this omission, by itself, does not automatically render the exclusion ambiguous. There are, however, genuine issues of material fact as to whether the Pollution Exclusion may be ambiguous, at least as to some of Doe Run's lead-related activities, because of this omission.  These issues arise from the factual context of this case and Missouri precedent on pollution exclusions.

The Hocker Oil case cited by Doe Run is relevant.  In Hocker Oil, 997 S.W.2d at 517-18, the Missouri Court of Appeals found the pollution exclusion in the policy did not preclude coverage for property damage caused when a gasoline tank at one of the plaintiff's service stations failed, and 2,000 gallons of gasoline were released into the ground and migrated to adjoining land.  The landowner sued the plaintiff and after settling the suit, the plaintiff sought indemnification from its insurer.  The insurer denied coverage on the basis of the applicable policy's pollution exclusion.  The plaintiff appealed, arguing that gasoline was its product and not a pollutant.  Id. at 513.  The Missouri Court of Appeals noted that gasoline had not been identified with particularity as a pollutant in the insurance policy, and determined the plaintiff "could have reasonably concluded that gasoline was not deemed a pollutant for purposes of the exclusion since it was not specifically identified as such." Id. at 518.  It is important to note the court's determination was informed by its observation that "it

would be an oddity for an insurance company to sell a liability policy to a gas station that would specifically exclude that insured's major source of liability."  Id.

Here, although the policies were issued to Fluor Corporation, and provided coverage for Doe Run's predecessors rather than Doe Run, Hartford and Fluor were unquestionably aware when the policies were issued that Fluor's subsidiary was in the business of conducting lead mining, handling, transporting and smelting operations in and around Herculaneum.  Hartford therefore knew of potential risks arising from lead in connection with its issuance of the Fluor policies, but chose not to specifically exclude any risk associated with lead.  If the Pollution Exclusion is applied to all aspects of Doe Run's lead-related operation, it could potentially negate virtually all coverage.  Cf. American States Ins. Co. v. Kiger, 662 N.E.2d 945, 948-49 (Ind. 1996).  There are no facts in the record to indicate how significant the Herculaneum lead-related operations were to Fluor's subsidiary or its overall business, or to establish Hartford's underwriting practices with respect to the policies.  Under these circumstances, Hartford's unsupported assertion that Fluor/Doe Run could have no reasonable expectations of coverage, and that denial of coverage for lead-related activities could not possibly render coverage illusory under the policies, is not established as a matter of law.

The cases on which Hartford relies also do not establish its entitlement to summary judgment as a matter of law.  In Sargent Construction Co. v. State Automobile Insurance Co., 23 F.3d 1324 (8th Cir.1994), the Eighth Circuit Court of Appeals, applying Missouri law, examined whether a solution of muriatic acid used by a contractor that resulted in damage to the property owner's fixtures was a pollutant within the meaning of the contractor's insurance policy's pollution exclusion.  The insured offered evidence that laypersons in the construction business would not consider muriatic acid to be a pollutant.  The policy defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or

13

contaminant" and then listed examples of such substances.  The Eighth Circuit concluded that when the definition was applied to a particular substance, the issue became whether the substance could be classified as an "irritant or contaminant."  The Court found that the policy's definition of "pollutant" was ambiguous because in the context of a claim for bodily injury or property damage, a substance could be an "irritant or contaminant" if it in fact caused a covered injury, or if it merely had the capability of causing a covered injury, regardless of whether the accident giving rise to the specific claim involved that harm.  Id. at 1327.

The language of the Pollution Exclusion in this case is different than that in Sargent. However, Hartford's request for judgment as a matter of law on the broad proposition that "lead is a pollutant" may raise similar ambiguities where the assertion is applied to all aspects of Doe Run's lead-related business operation, in the context of the scope of the Underlying Claims as quoted above. For this reason, Hartford's cited cases that generally describe lead as an "air pollutant" or "pollutant,"and Doe Run's statement in the post-policy 1990 DNR consent order that it operates a lead smelter which emits "lead, among other pollutants, an air contaminant," do not establish the proposition that "lead is a pollutant" as a matter of law under the Pollution Exclusion in the context of this case.

None of the Missouri cases cited by Hartford establish that "lead is a pollutant" as a matter of law.  In Cincinnati Insurance, 54 S.W.3d 661, the Missouri Court of Appeals held that friable asbestos was a pollutant within the meaning of the applicable pollution exclusion because it was "unquestionably" a solid or thermal "irritant" or "contaminant."  Id. at 666.  The pollution exclusion at issue in Cincinnati Insurance defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste

includes materials to be recycled, reconditioned or reclaimed." Id. at 664.  This standard exclusion, which is known as an "absolute pollution exclusion," id. at 663, is significantly broader than the Pollution Exclusion at issue here, and therefore Cincinnati Insurance is readily distinguishable. Similarly, the language of the pollution exclusions in Heringer, 140 S.W.3d at 104-06, and Casualty Indemnity Exchange, 997 S.W.2d at 550, on which Hartford relies, is so much more comprehensive than the Pollution Exclusion of the Hartford policies that those decisions are not persuasive.[5]

In American Western Home Insurance, 2009 WL 792483, at **2-3, the United States District Court for the Western District of Missouri concluded there was no coverage for an underlying claim for bodily injury based on "mold" and other "airborne contaminants and/or irritants" under mold and pollution exclusions.  The mold exclusion barred coverage for injury based on mold, and the pollution exclusion barred coverage based on other airborne contaminants and/or irritants.  The pollution exclusion provided in relevant part:  "This insurance does not apply to . . . 'bodily injury' or 'property

---

[5]In Heringer, the policy specifically excluded lead, and defined "pollutant" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, in any form, including, but not limited to lead, asbestos, formaldehyde, radon, any controlled chemical substance or any other substance listed as a hazardous substance by any governmental agency.  It also includes smoke, vapor, soot, fumes, alkalis, chemicals, garbage, refuse and waste.  Waste includes materials to be recycled, reconditioned or reclaimed." 140 S.W.3d at 103.  The pollution exclusion provided, "We will not cover bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release, escape, seepage, trespass, wrongful entry, migration, ingestion, inhalation or absorption of pollutants from any source." Id.

In Casualty Indemnity, the absolute pollution exclusion at issue barred coverage for claims arising out of the "pollution hazard" which included "actual exposure ... to the ... toxic ... properties of any solid [or] liquid ... toxic substances, including ... waste materials ... containing any of the foregoing." 997 S.W.2d at 549.  In Casualty Indemnity, the Missouri Court of Appeals distinguished the Eighth Circuit's Sargent decision, which examined whether muriatic acid was an "irritant or contaminant" within the meaning of a pollution exclusion, on the basis that the much broader Absolute Pollution Exclusion before it barred coverage for damage arising from exposure to toxic substances, and the underlying petition specifically alleged that sludge containing toxic substances (including lead) caused the claimed damage. Id. at 550-51.

damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape or 'pollutants' . . . ." Id. at *2.  The claimant alleged bodily injury resulting specifically from "airborne contaminants and/or irritants," which language the court found mirrored the language in the exclusion, which defines pollutant as "any solid, liquid, gaseous or thermal irritant or contaminant."

On the current record, American Western is distinguishable from the instant case on two grounds.  First, the underlying allegations of injury in American Western directly mirrored the language of the applicable pollution exclusion, while the allegations in the Underlying Claims are broad and appear to be directed to all aspects of Doe Run's lead-related operations, as discussed above, and are not clearly limited to substances that can be described as "pollutants" as a matter of law.  Second, the mold and other airborne contaminants which were pollution under the policy exclusion in American Western could not under any circumstances be considered useful products of the insured's primary business, unlike Hocker Oil, which the Western District distinguished, so the insured could not have had any reasonable expectation of coverage.  As discussed above, there are fact issues here as to whether the Pollution Exclusion is ambiguous and whether Doe Run may have a reasonable expectation of coverage with respect to at least some of its lead-related activities in the context of the Underlying Claims.

**Conclusion**

For these reasons, the Court finds that Hartford has not met its burden to establish that the Pollution Exclusion, when strictly construed against it, is clearly applicable as a matter of law to bar any coverage to Doe Run based on the Underlying Claims.  Hartford's motion for partial summary

judgment should therefore be denied without prejudice.  Doe Run's motion for continuance of Hartford's motion for partial summary judgment will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Hartford's Motion for Partial Summary Judgment that the Underlying Claims Arise Out of the Release of Pollutants is **DENIED** without prejudice.  [Doc. 139]

**IT IS FURTHER ORDERED** that Doe Run's Motion for Continuance of Hartford's Motion for Partial Summary Judgment is **DENIED** as moot.  [Doc. 159]

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this ___26th___ day of April, 2010.